United States Court of Appeals,

Fifth Circuit.

No. 91–7061.

Christian S. NIELSEN, Plaintiff–Appellant,

v.

UNITED STATES OF AMERICA, Defendant–Appellee.

Nov. 9, 1992.

Appeals from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA and GARWOOD, Circuit Judges and Werlein,[*]*District Judge.

PER CURIAM:

Christian S. Nielsen appeals from the district court's judgment that found him liable under 26 U.S.C. §§ 6700 and 6701 for promoting abusive tax shelters. WE AFFIRM.

I. FACTS

This case arises out of Nielsen's[1] involvement with The Coral Tax Shelter ("Coral"). Coral was a Brazilian research entity that was formed in order to take advantage of research and development tax credits. Investors joined partnerships at the behest of Nielsen and others. These partnerships then became a conduit through which illegal tax credits flowed to the partners.

Each partnership signed a contract to pay a research fee of between $600,000 and $800,000 to Coral for research on monoclonal antibody conjugate. While only a fraction of the contract price was paid in cash, the entire contract price was written off in research and development expenses. The deals were structured so that one-eighth of the contract price was paid in cash and the remaining seven-eighths in a promissory note denominated in Brazilian cruzeiros. The notes did not mature until seven years after the contract date, at which time they would be paid off in four annual payments.

During the time these partnerships were formed, the Brazilian economy was experiencing

_____

[*]District Judge of the Southern District of Texas, sitting by designation.

[1]Nielsen is a lawyer and certified public accountant licensed and certified in Texas.

hyperinflation of approximately 80% per year. Most economists expected this trend to continue. Further, the notes did not comport with prudent business practice. The notes failed to contain any inflationary index or monetary correction clause and, therefore, they were essentially worthless. The partnerships made little or no profit. Therefore, each investor essentially bought an eight dollar deduction for every dollar invested—safe in the knowledge that the notes would be worthless when they eventually matured.

Nielsen set up numerous partnerships.[2] However, the only partnerships that are currently at issue are those partnerships that Nielsen formed in 1984.[3] After the tax reform act of 1984 ("TRA"), in order to qualify for a section 174 deduction, research had to be completed by the end of the calendar year, otherwise it would have to be capitalized.[4] Among the ten partnerships that Nielsen spawned in 1984, only eight were subject to the TRA. The eight contracts subject to the TRA were signed on October 24, 1984. However, Nielsen did not send the cash for these contracts until December 28, 1984.

The research that Coral engaged in was extremely complex and time consuming. Nielsen maintains, however, that Coral advised him that the research would be complete December 29, 1984, one day after the cash portion of the contract was paid. The district court found that Nielsen knew when he signed the October contracts that: (i) the research he was buying was already completed; and (ii) it was not possible for new research to be completed by the end of 1984.

Nielsen was the managing partner of all the partnerships in which he set up. Nielsen prepared the partnership books, tax returns, and schedule K–1's for nine of the ten partnerships.[5] Armstrong

---

[2]Nielsen formed four partnerships in 1982, six in 1983, and ten in 1984.

[3]Nielsen filed bankruptcy on August 3, 1987. The district court discharged all Nielsen's tax penalties that related to transactions occurring on or before August 3, 1984. *See* 11 U.S.C. § 523(a)(7)(B). Consequently, only the penalties associated with Nielsen's involvement in the ten partnerships formed in 1984 are at issue here.

[4]In 1984, the Tax Reform Act ("TRA") changed the section 174 research and development tax credit.

[5]A schedule K–1 is the document that states each individual partner's proportionate income or loss based upon their percentage ownership. The income or loss on the schedule K–1 is in turn reported on each partner's individual tax return. Therefore, the contract price that each

Associates, the tenth partnership, separately prepared its partnership tax return and schedule K–1's. Nielsen's involvement with Armstrong included: (i) providing the partnership documents and explaining the Section 174 deduction; (ii) compiling Armstrong's financial statement and sending it to Armstrong's tax preparer; and (iii) sending the completed K–1's to the partners.

## II. PROCEEDINGS

On May 2, 1988, Nielsen was assessed penalties by the IRS for promoting abusive tax shelters under the provisions embodied within Sections 6700 and 6701.[6] Nielsen then paid 15% of the assessed amount and commenced a claim for a refund in the northern district of Texas.[7] On October 11, 1990, the government had a $165,141.95 federal tax lien filed against Nielsen in the real and personal property records of Dallas County, Texas. Nielsen tried to avoid the filing of the tax lien; however, both the magistrate and the district court denied his objections.[8]

The government and Nielsen filed cross-motions for summary judgment on the penalties assessed under Sections 6700 and 6701. The court denied the motions with respect to the Section 6701 penalty; however, it granted the government's motion for summary judgment on Section 6700 liability. The court reasoned that Section 6700 was a strict liability penalty with respect to a gross valuation overstatement.[9] The Section 6701 issues went to trial, and the court held Nielsen liable for

partnership paid was divided into percentage shares based upon the proportion of cash paid by each investor. Because Coral would report little or no income, each partner's proportionate amount of the contract became a loss on the schedule K–1, which was in turn used to offset income on each partner's individual tax return.

[6]Nielsen was assessed $32,274 under § 6700 and $239,000 under § 6701. Section 6700 imposes a penalty against a promoter of an abusive tax shelter who knowingly makes a false or fraudulent statement regarding a tax benefit or makes a material gross valuation overstatement. *See* 26 U.S.C. § 6700. Section 6701 imposes liability upon those who aid, assist, or advise the preparer of a tax document with knowledge that an understatement of tax will result. *See* 26 U.S.C. § 6701.

[7]Section 6703 provides an exception to the general rule that the entire amount of the assessment must be paid up front. Under Section 6703 the taxpayer may contest § 6700 and 6701 penalties by paying only 15% of the assessment and filing a refund suit in federal district court.

[8]Nielsen's appeal to this court was dismissed for failure to prosecute because he failed to file a brief. *See* F.R.A.P. 31.

[9]The court granted each party an opportunity to submit briefs on the § 6700 calculation. Subsequently, the court found Nielsen liable for $26,521.60 in § 6700 penalties.

$110,000 in penalties.  Nielsen now appeals.

## III. DISCUSSION

Nielsen argues on appeal that:  (1) the trial court exceeded its jurisdiction by adjudicating Nielsen liable for the remaining 85% of the assessed penalties;  (2) Nielsen is not a "tax return preparer" and, therefore, is not liable for Section 6701 penalties;  (3) the trial court's factual findings were clearly erroneous;  and (4) the trial court incorrectly held that Nielsen was not entitled to injunctive relief from the tax lien that was filed by the IRS prior to trial.

*1. The scope of the trial court's jurisdiction.*

Nielsen argues that the district court did not have jurisdiction to enter a judgment against him for the remaining unpaid 85 percent of the penalties assessed against him.  Nielsen contends that because the IRS failed to assert a counterclaim, the district court lacked the power to render a judgment for the unpaid balance.  Further, Nielsen argues that the counterclaim was compulsory, and the government's claim is now barred.  Admittedly, prior to 1989 the tax code was silent as to the procedures that the IRS must implement in pursuing the unpaid balance of a penalty when a taxpayer filed a refund action pursuant to 26 U.S.C. § 6703.

Nielsen asserts that absent an express provision in Section 6703, granting jurisdiction over the entire penalty, by default Rule 13(a) of the FRCP requires the government to file a compulsory counterclaim.  The plain language and intent of Section 6703 leads us to conclude that taxpayer's arguments are misplaced.

It is an axiomatic jurisdictional prerequisite that a taxpayer must pay the full assessment of tax liability in order to commence a civil action in district court.  *See* 26 U.S.C. § 7422(a).  The procedural mechanism by which taxpayers are permitted to contest Section 6700 and 6701 penalties stands in stark contrast to the general rule.  Taxpayers are granted an exception in these cases and need only deposit 15 percent of the assessment in order to commence a case a district court pursuant to Section 6703.  The statutory framework provides that after the taxpayer pays the 15% and the IRS denies a refund for that amount, then the taxpayer may "begin a proceeding in the appropriate United States district court *for the determination of his liability for such penalty....*"  26 U.S.C. §

6703(c)(2). The plain language of the statute clearly contemplates that the district court will determine the entire amount of the penalty.

When congress enacted Section 6703, it adopted virtually identical language to Section 6694, which provided for tax return preparer penalties. Section 6694, which also contains the provision allowing a 15 percent prepayment of the assessed penalty, provides that the tax preparer may "begin a proceeding in the appropriate United States district court *for the determination of his liability for such penalty*...." 26 U.S.C. § 6694(c)(2). The Joint Committee on Taxation explained that in Section 6694 suits, the IRS "need not file a counterclaim for the remaining 85 percent of the penalty outstanding because any court decision with regard to the refund of the 15 percent penalty will apply equally to the remaining 85 percent." Joint Committee on Taxation, "General Explanation of the Tax Reform Act of 1976," 1976–3 C.B. 1, 357 (1976). The legislative history behind Section 6703 evinces congressional intent to enact procedures akin to Section 6694. *See* S.Rep. No. 97–494, 97th Cong., 2d Sess. 270 (1982), U.S.Code Cong. & Admin.News 1982, 781, 1017.

The district court properly adjudicated the entire penalty and did not step outside of its jurisdictional boundaries. If we were to adopt the position forwarded by Nielsen, we would have to find congressional intent to bifurcate Section 6703 proceedings. The provision in Section 6703, just like Section 6694, is not meant to require two suits on every penalty, nor a compulsory counterclaim, but to allow taxpayers the opportunity to litigate their claims in district court without the onerous burden of paying the entire penalty at the outset. These procedures represent a forbearance from the general jurisdictional barriers required for tax litigation in district court. Therefore, we find no jurisdictional error in the district court's judgment.

*2. Whether "tax preparer status" applies to Section 6701 penalties.*

Nielsen argues that in order for Section 6701 penalties to be assessed against him, his actions must impact "another person's" tax liability. *See* 26 U.S.C. § 6701(a)(3). He contends that because treasury regulations do not deem a general partner who prepares a partnership return to have prepared the other partners' returns for Section 6694 purposes, that the necessary "other person" requirement in Section 6701(a)(3) is not met. The government concedes that Nielsen is not a "tax

return preparer" for Section 7701(a)(36) and Section 6694 purposes. Section 6694, which provides for tax return preparer penalties, specifically cross-references Section 7701(a)(36). *See* 26 U.S.C. § 6694(f). However, the scope of Section 6701 is much broader, it imposes aiding and abetting liability on "any person," and is not bound by the term of art—"tax return preparer." Moreover, Section 6701 does not cross-reference the Section 7701(a)(36) definition of tax return preparer.

The government has not pursued Mr. Nielsen as a tax return preparer under Section 6694. Therefore, the attempted invocation of the Section 7701(a)(36) definition is irrelevant to a Section 6701 inquiry. Section 6701, by its very terms, applies to any person who aids, assists, procures, or advises with respect to any other person's tax liability. Surely, Mr. Nielsen aided and abetted the investors who joined his partnerships in their quest to diminish their tax liability. Mr. Nielsen actively promoted, marketed, and sold Coral partnerships interests to investors—he was not solely preparing tax returns—he was involved on a far broader scale. Thus, the district court properly held Nielsen liable for Section 6701 penalties because he did aid and assist "other people" in understating their tax liability outside of his capacity as general partner and tax return preparer.

*3. The trial court's factual findings were not clearly erroneous.*

Taxpayer next contends that the district court committed clear error in the following respects: (i) the court retroactively imputed research knowledge to establish bad faith; (ii) the trial court erroneously held that Nielsen's reliance on Mankoff's opinion was unjustified; (iii) the court should have taken judicial notice of the unsettled state of the law at the time these partnerships were formed; and (iv) the trial court committed legal error by allowing circumstantial and opinion evidence establish intentional wrongdoing.

Taxpayer is collaterally estopped to deny the factual findings made by the tax court in *Agro Science Co. v. Commissioner,* 58 T.C.M. 1093 (1989), *aff'd,* 934 F.2d 573 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 300, 116 L.Ed.2d 243 (1991). Nielsen is bound by *Agro Science* because he authorized representation of his partnership interests in the litigation. *See, e.g., Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 869 (5th Cir.1984). The tax court's findings in *Agro Science* were largely adopted by the district court in this case and those findings are now

unassailable.

The district court found that the partnerships failed to turn any significant profit. Further, the cash portion of each transaction was more than enough to finance the research. Therefore, the notes were not just an illusory liability because of hyper-inflation, but were not necessary for any business purpose. These findings led to the inescapable conclusion that Nielsen formed the partnerships solely with the intent to create tax write-offs.

Nielsen vigorously asserts that he reasonably relied on the legal opinion of Ronald Mankoff. Mankoff, a "prominent tax attorney," who was also a participant in the Coral program, gave his imprimatur to the Coral program. The trial court correctly noted that Nielsen was "well-versed in the applicable law and aware of the falseness of the Coral tax shelter deductions."

Nielsen's asserts that he reasonably relied on the credentials of the Coral Staff, and it is unfair to analyze the transaction in light of current scientific knowledge. He asserts evidence that he actually attended seminars and visited the Brazilian facilities. This evidence was disregarded by the trial court in favor of expert testimony that showed research of this type could not have been completed in the short time at the end of 1984. Moreover, the trial court found that Nielsen in fact knew that any research he was buying had already been completed.

The determinations made by the trial court are cloaked with the clearly erroneous standard of review. *See Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). When the district court is faced with testimony that may lead to more than one conclusion, its factual determinations will stand so long as they are plausible—even if we would have weighed the evidence otherwise. *See id.* Nielsen merely contests the district court's adverse factual findings by asserting contrary testimony—that is simply insufficient to overturn the district court. *See Verdin v. C & B Boat Co.,* 860 F.2d 150, 154 (5th Cir.1988).

Nielsen also contends that the trial court committed legal error when it relied on circumstantial evidence and expert opinion to establish intentional wrongdoing. Indeed, intent is difficult to prove in any setting. Proof of a defendant's intent is frequently inferential in nature. *See, e.g., Huddleston v. Herman & MacLean,* 640 F.2d 534, 546 (5th Cir. Unit A Mar. 1981) (scienter

in Section 10(b)), *rev'd on other grounds,* 475 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Therefore, any assistance that expert testimony and circumstantial evidence will provide should be welcomed at the trial court level. Certainly, the trial court did not commit legal error in utilizing such testimony to establish intent. The conclusions following from that testimony are factual in nature and they are reviewed on a clearly erroneous standard. In any event taxpayer's argument is entirely unsupported and is therefore meritless.

*4. Entitlement to injunctive relief from tax lien.*

Nielsen contends that the United States improperly filed a tax lien against him, because Section 6703 bars the IRS from collection proceedings while a refund action is pending. We do not need to address this issue because taxpayer is barred by the doctrine of res judicata.

On October 30, 1990, taxpayer filed a motion in District Court to remove the lien from the Dallas County records. The motion was referred to a magistrate, who recommended that the motion be dismissed. The district court adopted the magistrate's recommendation. Nielsen then filed an appeal on March 25, 1990, which was dismissed by this court for failure to prosecute, because Nielsen failed to file a supporting brief. Once that appeal was dismissed Nielsen's chance to contest the lien was irretrievably lost. A dismissal for failure to prosecute bars any further adjudication, because it operates as an adjudication on the merits. *See Harrelson v. United States,* 613 F.2d 114, 115 (5th Cir.1980) (per curiam). Therefore, we find that Nielsen's appeal regarding the tax lien is barred.

## IV. CONCLUSION

The district court properly adjudicated the entire penalty because the plain language of Section 6703 contemplates one proceeding in which the entire penalty dispute is resolved. Section 6701 liability is not premised on tax return preparer status, and Nielsen was properly held liable for aiding and abetting "other persons" in understating tax liability. Moreover, the factual findings of the district court were well grounded in the record and free of reversible error. Finally, we are barred from determining the lien issue by virtue of Nielsen's failure to prosecute.

AFFIRMED.