**In re C.F. FOODS, L.P., Debtor.**

**Arthur Liebersohn, Trustee, Plaintiff,**

**v.**

**Internal Revenue Service, et al., Defendants.**

**Bankruptcy No. 99–15996 KJC. Adversary No. 00–451.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 3, 2001.

Michael H. Kaliner, Jackson, Cook, Caracappa & Bloom, Fairless Hills, PA, for debtor.

Paul B. Maschmeyer, Ciardi, Maschmeyer & Karalis, PC, Philadelphia, PA, for plaintiff/trustee.

Christopher R. Zaetta, U.S. Department of Justice, Washington, DC, for defendant/Internal Revenue Service.

## MEMORANDUM OPINION

KEVIN J. CAREY, Bankruptcy Judge.

An involuntary chapter 7 bankruptcy petition was filed against C.F. Foods, L.P. on May 6, 1999.[1] An order for relief was

1. Some of the dates and information set forth in this Background (other than the numbered paragraphs which contain factual averments that were set forth in the trustee's Second Amended Complaint and admitted by the Internal Revenue Service, as noted below) are taken from the main case and adversary proceeding dockets. This Court may take judicial notice of docket entries since "Federal Rule of Evidence 201 authorizes a court to take judicial notice of an adjudicative fact 'not subject to reasonable dispute' ...[and] so long as it is not unfair to a party to do so and does not undermine the trial court's fact finding authority." *In re Indian Palms Assoc.,* 61 F.3d 197, 205 (3d Cir.1995).

entered on July 1, 1999 and the chapter 7 trustee was appointed as interim trustee on July 15, 1999. On June 20, 2000, the trustee filed an adversary proceeding against the Internal Revenue Service ("IRS") to recover pre-petition payments made by the debtor to the IRS on the theory that the payments were fraudulent transfers. The trustee's complaint was amended twice to add Edward Stillman, Patrick Stillman, Karen Stillman and First Union National Bank (the "Bank") as defendants. Presently before this Court are cross motions for summary judgment filed by the IRS and the trustee.[2] For the reasons which follow, both motions shall be denied.

## BACKGROUND

The IRS has admitted the following facts as alleged in the trustee's Second Amended Complaint[3]:

1. On January 1, 1994, David Burry and Edward Stillman, formed a limited partnership in Chadds Ford, Pennsylvania known as C.F. Foods, L.P.

2. C.F. Foods was created for the stated purpose of engaging in the purchase, sale and distribution of wholesale candies from large candy manufacturers and wholesale distributors to local purchasers, such as supermarkets, candy stores, and other retailers.

3. David Burry was a general partner who managed and operated C.F. Foods.

4. Edward Stillman was an alleged limited partner and investor in C.F. Foods.

5. David Burry solicited investors in C.F. Foods by promising them that his expertise in the wholesale candy distribution business resulted in high profits for C.F. Foods and, as a result, C.F. Foods could provide returns of 18–30% to investors.

6. The returns paid to C.F. Foods' early investors were paid for with the proceeds derived from investments made by later investors.

7. Over time, David Burry, Edward Stillman and others eventually attracted over $25 million in investments in C.F. Foods.

8. David Burry represented to investors, Edward Stillman, financial institutions and his accountant that he was very successful at purchasing very large quantities of candy from

**2.** The IRS filed the "United States' Motion For Partial Summary Judgment" and memorandum of law in support thereof on November 22, 2000 (the "IRS Motion for Partial Summary Judgment"). The trustee filed the "Trustee's Memorandum of Points and Authorities in Response To the Motion of the Internal Revenue Service for Partial Summary Judgment" on December 20, 2000. The trustee filed the "Trustee's Cross–Motion For Summary Judgment Against the Answer Of the Internal Revenue Service to Trustee's Amended Complaint to Recover Fraudulently Conveyed Income Taxes" and a Memorandum of Points and Authorities in support thereof on December 6, 2000 (the "Trustee's Cross–Motion for Summary Judgment"). (It appears that the trustee also filed an identical Cross–Motion for Summary Judgment and Memorandum of Points and Authorities on December 13, 2000.) The IRS filed its response to the Trustee's Cross–Motion for Summary Judgment on January 5, 2001. Hearings were held on February 26, 2001 to consider the IRS Motion for Partial Summary Judgment and the Trustee's Cross–Motion for Summary Judgment.

**3.** The Plaintiff's Second Amended Complaint To Recover Fraudulently Conveyed Income Taxes (the "Second Amended Complaint") was filed in this adversary proceeding on November 16, 2000. The United States' Answer to the Second Amended Complaint was filed on January 5, 2001.

wholesalers and manufacturers at "close-out" prices and then reselling these large quantities in the marketplace for a significant mark-up.

9. C.F. Foods purportedly conducted two types of sales transactions.

10. The portion of the business dubbed by David Burry as "Sales One" was completely fictitious and fraudulent in nature.

11. David Burry was solely responsible for managing Sales One and no one at C.F. Foods other than David Burry had any personal involvement in this aspect of the business.

12. Sales One, essentially, involved the purchase of large quantities of "close out products" and subsequent re-sale to customers through direct shipment orders. In reality, no such transactions ever occurred.

13. The other portion of the business, known as "Sales Two," was the "legitimate" aspect of C.F. Foods with real employees, real inventory, and real sales deliveries.

14. In 1988, Sales Two reflected actual sales totaling less than $5 million, out of total reported sales of more than $140 million.

15. Using the invoices, shipping documents and related business records acquired from the small amount of real candy business conducted by C.F. Foods, David Burry systemat-ically created phony "business records" by whiting out old information, typing in new information, and then photocopying the forged records so that it would be indistinguishable from a copy of authentic business records reflecting real transactions.

16. David Burry then logged hundreds and hundreds of fictitious transactions into the computerized general ledger system for C.F. Foods, which generated false balance sheets, income statements, and accounts receivable listings, among others.

17. Based upon the false information provided by David Burry, C.F. Foods reported the following total sales figures to investors and financial institutions:

| Year | Sales Reported |
| --- | --- |
| 1994 | $ 8,699,152 |
| 1995 | $ 19,026,265 |
| 1996 | $ 40,590,990 |
| 1997 | $ 83,985,013 |
| 1998 | $142,990,010 |
| **Total** | **$295,291,430** |

18. By David Burry's own admission, approximately 97% of these sales never actually occurred.

19. Based upon the fraudulent sales figures, David Burry caused C.F. Foods to make tax payments on behalf of its partners as follows:[4]

4. This chart is reproduced from the "Factual and Procedural History" section of the Trustee's Memorandum of Points and Authorities in Support of Cross–Motion For Summary Judgment filed on December 6, 2000. In its answer to the Second Amended Complaint, the IRS denied the trustee's factual allegations regarding the dates and amounts of payments to the IRS, stating "[T]he United States avers that the payments by C.F. Foods to the IRS were partnership distributions to its partners, David Burry and Edward Stillman, and then payments from these partners over to the IRS for their own personal tax liability." (IRS Answer to Second Amended Complaint, ¶ 28). *See also* the discussion of this issue in Section I, *infra*. However, at the February 26, 2001 hearing on the IRS and trustee cross motions for summary judgment, the trustee stated that the IRS had admitted to the amount and dates of the payments in a Request for Admissions (Tr. at p. 33). It appears that the trustee's Request for Admissions was supposed to be attached as Exhibit

| COUNTS OF COMPLAINT | DATE | AMOUNT OF TAX PAYMENT | NATURE OF TAX PAYMENT |
|---|---|---|---|
| I, II, III | 04/15/96 | $ 306,496.00 | IRS Tax Payment for Stillman |
| IV, V, VI | 06/01/96 | $ 100,000.00 | IRS Tax Payment for Burry |
| VII, VIII, IX | 07/26/96 | $ 73,120.47 | IRS Tax Payment for Burry |
| X, XI, XII | 10/08/96 | $ 61,727.72 | IRS Tax Payment for Burry |
| XIII, XIV, XV | 04/15/97 | $ 464,222.00 | IRS Tax Payment for Stillman |
| XVI, XVII, XVIII | 06/23/97 | $ 103,849.19 | IRS Tax Payment for Burry |
| XIX, XX, XXI | 04/15/98 | $ 807,838.00 | IRS Tax Payment for Burry |
| XXII, XXIII, XXIV | 04/15/98 | $ 888,019.00 | IRS Tax Payment for Stillman |
| XXV, XXVI, XXVII | 11/30/98 | $ 384,987.00 | IRS Tax Payment for Burry |

**Total Payments to IRS:** $3,190,259.38

20. On September 20, 1999, a Guilty Plea Agreement was reached between the government and David Burry in which, among other things, David Burry pled guilty to an Information charging (1) money laundering, in violation of 18 U.S.C. § 1956; (2) wire fraud, in violation of 18 U.S.C. § 1343; (3) bank fraud, in violation of 18 U.S.C. § 1344; and (4) possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g).

In his Second Amended Complaint, the trustee asserts the following:

30. Upon information and belief, in September, 1999, Edward Stillman directed Christopher M. Clair, the former accountant of the estate of C.F. Foods to file amended tax returns for the sole purpose of eliminating the fraudulent sales figures mentioned above, with the effect being that the partners would receive a K–1 from the Debtor which would allow them to obtain a substantial refund from the Internal Revenue Service based on the above-referenced payments.

31. The filing of said tax return was prepared and filed without the approval of the estate, was illegal because it was not signed by the Trustee who had already been appointed in this matter, and was never disclosed to the estate or the Trustee.

32. Upon information and belief, Edward Stillman and Karen Stillman, individually or as tenants by the entirety, have received a substantial refund, and have forwarded some, if not all of the funds, to either Patrick Stillman and/or First Union National Bank for the sole purpose of providing collateral security to First Union National Bank for a personal loan of Patrick Stillman.

In its Answer, the IRS denied the allegations in paragraphs 30, 31 and 32, except to admit that the IRS issued a refund to Edward Stillman in excess of $1.4 million

"D" to the Trustee's Cross–Motion for Summary Judgment, but the Requests for Admission were neither attached to the Trustee's Cross–Motion for Summary Judgment nor the Memorandum of Points and Authorities in support thereof. Because the IRS includes a similar table listing the dates and amounts of payments in the background sections of its Memorandum of Law in Support of United States' Motion for Partial Summary Judgment (at p. 3) and the United States' Opposition to Trustee's Cross–Motion For Summary Judgment (at p. 4–5), I will accept the amount and timing of the payments as set forth in the above chart for purposes of considering the cross-motions for summary judgment.

on or about December 15, 1999.[5]

The IRS Motion for Partial Summary Judgment seeks judgment in favor of the IRS on the counts related to avoidance of payments made by the debtor for the benefit of Edward Stillman, because the IRS was but a "mere conduit" for transfers from the debtor to Edward Stillman. The Trustee's Cross–Motion for Summary Judgment seeks judgment in favor of the trustee for all of the payments to the IRS because the IRS admitted in its answer to the Amended Complaint that the payments are avoidable under an "actual fraud" theory of 12 Pa.C.S.A. § 5104(a)(1) of the Pennsylvania Uniform Fraudulent Transfer Act, applicable to this case by virtue of § 544 of the Bankruptcy Code.

### LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr.P. 7056.

On motion for summary judgment, the moving party " . . . always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, deposi-

tions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). An issue is "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Id.*, 477 U.S. at 249, 106 S.Ct. 2505.

### DISCUSSION

**1. *The IRS Motion For Partial Summary Judgment.***

■ In its Motion for Partial Summary Judgment, the IRS argues that, even assuming the transfers from the debtor to the IRS for the benefit of Edward Stillman are avoidable under Sections 544 or 548 of the Bankruptcy Code, Section 550 of the Bankruptcy Code does not allow the trustee to recover those transfers from the IRS. Section 550 provides that the trustee may recover avoided transfers only from initial transferees (§ 550(a)(1)) or from immediate or mediate transferees of the initial transferee (§ 550(a)(2)).[6] The IRS ar-

---

5. In the Declaration of Regina Monell, IRS Bankruptcy Specialist, attached to the Motion for Partial Summary Judgment, (discussed in Section I, *infra*.), Ms. Monell states that the IRS refunded the funds in issue to Edward and Karen Stillman.

6. Section 550 of the Bankruptcy Code (11 U.S.C. § 550) provides, in part, as follows:
 **550. Liability of transferee of avoided transfer.**
 (a) Except as otherwise provided in this section, to the extent that a transfer is

avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
 (2) any immediate or mediate transferee of such initial transferee.
 (b) The trustee may not recover under section (a)(2) of this section from—

gues that it is neither an initial transferee nor a immediate or mediate transferee because Edward Stillman is the initial transferee and the funds passed through the IRS as a "mere conduit" before reaching Edward Stillman.

As other courts have noted, the term "initial transferee" is not defined in the Bankruptcy Code and there is no legislative history offering guidance. *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir.1988). Most courts that have examined the issue of whether an entity is an "initial transferee" have adopted a "dominion and control test," which defines an initial transferee as one who has "dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded Financial*, 838 F.2d at 893. Other entities that may receive a transfer for the limited purpose of allowing the funds to "pass through" to another recipient are "mere conduits" that enable the funds to be delivered to the "initial transferee."

The leading case on the dominion and control test is *Bonded Financial, supra*, decided by the Seventh Circuit Court of Appeals. In that case, the debtor sent the defendant bank a check made payable to the bank in the amount of $200,000 with written instructions directing the bank to deposit the check into an account belonging to an individual owner of the debtor, Mr. Ryan. *Bonded Financial*, 838 F.2d at 891. The bank deposited the check into Mr. Ryan's account. *Id.* Ten days later, Mr. Ryan instructed the bank to debit his account in the same amount and apply the money to reduce an outstanding loan from

the bank to the individual. *Id.* After Bonded Financial filed bankruptcy, the trustee sought to recover $200,000 from the bank under Bankruptcy Code Section 548(a). *Id.* The court found that at the time the debtor delivered the check to the bank with instructions to deposit the check into Mr. Ryan's account, the bank was not the initial transferee of the check, because:

The Bank acted as a financial intermediary. It received no benefit. Ryan's loan was fully secured and not in arrears, so the Bank did not even acquire a valuable right to offset its loan against the funds in Ryan's account. Under the law of contracts, the Bank had to follow the instructions that came with the check. The Uniform Commercial Code treats such instructions as binding to the extent any contract binds (see UCC § 3–119). The Bank therefore was no different from a courier or an intermediary on a wire transfer; it held the check only for the purpose of fulfilling an instruction to make the funds available to someone else.

. . . .

The Bank had no dominion over the $200,000 until January 31 [ten days after the initial deposit], when Ryan instructed the Bank to debit the account to reduce the loan; in the interim, so far as the Bank was concerned, Ryan was free to invest the whole $200,000 in lottery tickets or uranium stocks.

*Bonded Financial*, 838 F.2d at 893, 894. A number of courts of appeals have adopted the dominion and control test of

---

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
(2) any immediate or mediate good faith transferee of such transferee.

. . . .
(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

*Bonded Financial* or of similar decisions, and I do so here.[7]

Based on the admitted facts in this case, the sequence of events concerning the relevant transfers is as follows: the debtor transferred funds in the total amount of $1,658,737.00 to the IRS by three checks made payable to the IRS for income tax payments on behalf of Edward Stillman. (Paragraph 19 in the Background, above.) The income tax payments were based on the debtor's sales figures as reported by David Burry, the vast majority of which were admittedly fraudulent. As a result of having the debtor's former accountant file amended tax returns, Edward and Karen Stillman (the "Stillmans") later obtained a refund from the IRS in an amount of more than $1.4 million.

The IRS relies upon 26 U.S.C. § 6402(a) in support of its contention that it had no dominion and control over the payments it received. Section 6402 provides:

### § 6402. Authority to make credits and refunds

■ (a) General rule—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) [offset of past-due support against overpayments]; (d) [collection of debts owed to Federal agencies]; and (e) [collection of past-due, legally enforceable state income tax obligations], refund any balance to such person.

The IRS argues that once the Stillmans demonstrated their entitlement to a refund, the IRS was required to refund the overpayment to the Stillmans pursuant to 26 U.S.C. § 6402. The trustee points out, however, that § 6402 gives the IRS discretion to setoff overpayments against other tax liabilities, obligations to the United States, support payments, or state income tax obligations and, therefore gives the IRS "dominion and control" over the funds. But the statutory grant of setoff authority contained in of 26 U.S.C. § 6402 is not enough to give the IRS dominion and control over the funds. There also must be some outstanding liabilities actually owing by the taxpayer at the time the refund is requested that enables the IRS to exercise a current right to setoff. The *Bonded Financial* Court found that the bank did not have a right to setoff at the time it received the transfer.[8] Therefore, the question is not whether the recipient of a transfer had a possible, inchoate right to exercise dominion and control over such funds, but whether it had an actual right

---

7. *See, e.g., In re Reeves,* 65 F.3d 670 (8th Cir.1995) (corporation was not an initial transferee of funds transferred by debtor into a corporate bank account fraudulently established and controlled by debtor); *In re First Security Mortgage Co.,* 33 F.3d 42 (10th Cir. 1994) (bank which received funds from debtor with directions to deposit the funds into a customer's business trust checking account was not an initial transferee); *In re Coutee,* 984 F.2d 138 (5th Cir.1993) (law firm was not an initial transferee of funds from debtors that were deposited in firm's trust account and paid to creditors (including firm's legal fees) at direction of debtors); and *In re Mont-*

ross, 209 B.R. 943 (9th Cir. BAP 1997) (partnership, which held an apartment house managed by debtor, was not an initial transferee of debtor's funds that were laundered by debtor through the partnership's accounts). It appears that this issue has not been decided by the Third Circuit Court of Appeals.

8. The *Bonded Financial* Court wrote: "Ryan's loan was fully secured and not in arrears, so the Bank did not even acquire a valuable right to offset its loan against the funds in Ryan's account." *Bonded Financial,* 838 F.2d at 893.

and ability to do so at the time it received the transfer.[9] If no outstanding liabilities existed during the time in which the IRS held the funds, then the IRS is obligated by statute to refund the moneys and does not have dominion and control over the funds.

In this case, however, the IRS did, in fact, exercise dominion and control over the funds paid by the debtor on account of Edward Stillman's income tax liability. The IRS attached to its Motion for Partial Summary Judgment a Declaration of Regina Monell, an IRS bankruptcy specialist, in which Ms. Monell states, in part:

2. On or about December 15, 1999, the IRS refunded to the [sic] Edward and Karen Stillman $533,946.13 for the 1996 tax year. That amount includes the taxes paid by (or on behalf of) Edward and Karen Stillman ($439,665.00), and statutory interest of $94,281.13 from the date of payment. *The IRS did not refund the $19,121.00 penalty paid for the underpayment of estimated tax.* [Emphasis added.]

. . . .

4. On or about December 15, 1999, the IRS refunded to Edward and Karen Stillman $900,190.13 for the 1997 tax year. That amount includes the taxes paid by (or on behalf of) Edward and Karen Stillman ($858,711.00),

and statutory interest ($41,479.13) from the date of payment. *The IRS did not refund the $29,308.00 penalty paid for the underpayment of estimated tax.* [Emphasis added.]

. . . .

6. The IRS did not setoff any amounts refunded to Edward and Karen Stillman against tax liabilities owed by either Edward or Karen Stillman.

Despite the statement in paragraph 6, other parts of the Declaration show that the IRS exercised dominion and control over the funds by withholding any "penalty paid for the underpayment of estimated tax" from its refund to the Stillmans. Accordingly, the IRS was not a "mere conduit" through which funds passed to an initial transferee, because the IRS did exercise its prerogative not to release some portion of the funds before transferring the balance of the funds to the Stillmans.

 In the IRS Motion for Partial Summary Judgment, the IRS raises an alternative argument that, even if it is not a "mere conduit," it cannot be considered the initial transferee of the debtor's funds at issue in this matter because "in substance, the payments made by Burry were partnership distributions to Stillman and Burry and [then] a payment from Stillman and Burry to the United States."[10] When deciding which entity is the initial transferee of the funds in question, the court

---

9. It is also important to note that the failure of the IRS to exercise an actual, current right to setoff does not change the analysis. In its Partial Motion for Summary Judgment, the IRS wrote: "And, even though the IRS had the statutory right to setoff any moneys owed to it from Stillman, like the bank in *Bonded Financial Services, Inc.* which had a similar right, it did not exercise this right." (IRS Motion for Partial Summary Judgment, pp. 11–12). This statement implies that if liabilities existed, the IRS could choose not to exercise any right to setoff and escape eligibility as an initial transferee. I reject such an im-

plication. The question is whether the recipient of the funds has the *ability* to exercise dominion and control at the time the transfer is made. If the right to setoff existed at the time the debtor's funds were being held by the IRS, the IRS is deemed to have dominion and control over the funds, regardless of whether it actually exercises any right to setoff. *See In re Blatstein*, 260 B.R. 698, 717–18 (E.D.Pa. 2001).

10. IRS Motion for Partial Summary Judgment, p. 10, n. 4.

should "step back and evaluate a transaction in its entirety." *In re Orange County Sanitation, Inc.*, 221 B.R. 323, 328 (Bankr. S.D.N.Y.1997) (citations omitted). As discussed above, the initial transferee is one who first exercises dominion and control over the debtor's property. Other courts have found that "the requisite dominion or control [to be deemed the initial transferee] is present when a corporate officer or shareholder causes the corporation to make payments on his personal debts or for his personal benefit." *Id.* at 327.[11]

■■■■ Burry, as general partner of the debtor, took control of the debtor's funds and used them to satisfy income tax liabilities (albeit, liabilities based upon fraudulently reported income) for the benefit of himself and Edward Stillman. At the time he made the payments to the IRS, Burry exercised dominion and control over the debtor's funds in a manner that earned him the status of an initial transferee. Whether Edward Stillman also exercised sufficient dominion and control over the funds at the time the debtor transferred the funds to the IRS to be considered an initial transferee cannot be ascertained from the admitted facts and, is a genuine issue of material fact left for trial.

Accordingly, if Burry (and possibly Edward Stillman) are initial transferees of the transfers in question, then the IRS cannot be the initial transferee and is an immediate or mediate transferee of the initial transferee. Whether voidable transfers can be recovered from the IRS as a mediate or immediate transferee under Section 550(b)(1), *i.e.* whether the IRS received the transfer of funds for value, and in good faith, without knowledge of the voidability (if appropriate) of the transfer in issue, are genuine issues of material fact left for trial. The IRS Motion for Partial Summary Judgment will be denied.

## II. *The Trustee's Cross–Motion for Summary Judgment.*

In the Trustee's Cross–Motion for Summary Judgment, the trustee argues that all of the necessary elements to establish "actual fraud" under the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S.A. § 5104(a)(1),[12] which is made applicable to the bankruptcy proceeding pursuant to Bankruptcy Code § 544, have been admitted by the IRS in its answer to the amended complaint.[13] Therefore, the trustee argues that there are no genuine issues of material fact and that summary

11. *See also In re Auto–Pak, Inc.*, 73 B.R. 52 (D.D.C.1987)(When debtor corporation's president took debtor's check made payable to the IRS and had it transformed into a cashier's check made payable to the IRS and applied to taxes owed by a second company he controlled, the debtor's president, and not the IRS, was the initial transferee); *In re Kenitra, Inc.*, 53 B.R. 150 (Bankr.D.Or.1985)(Employee, not the IRS, was the initial transferee of debtor's check made payable to the IRS for payment of income taxes on employee's bonus).

12. 12 Pa.C.S.A. § 5104(a) provides, in pertinent part, as follows:

(a) General Rule—A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with the actual intent to hinder, delay or defraud any creditor of the debtor.

13. The trustee filed his amended complaint on August 21, 2000. The IRS filed an answer to the amended complaint on September 20, 2000. As noted in footnote 4, *supra.*, the trustee filed a Second Amended Complaint on November 16, 2000 and the IRS filed its answer to the Second Amended Complaint on January 5, 2001. The Trustee's Cross–Motion for Summary Judgment was filed on December 6, 2000, prior to the IRS's answer to the Second Amended Complaint.

judgment should be granted in his favor. The IRS's response to the trustee's motion asserts (1) that sovereign immunity prevents the trustee from bringing an action against the IRS under Bankruptcy Code § 544; and (2) that a genuine issue of material fact exists because the IRS modified its admissions in its answer to the Second Amended Complaint.

### A.

The IRS challenges this court's jurisdiction[14] over the trustee's § 544(b) claims on the grounds that it is immune from suit. Because the IRS has already raised sovereign immunity in this proceeding, I must first decide whether it can again assert sovereign immunity before addressing the merits of its defense.

### (1)

■ The IRS previously asserted sovereign immunity in the context of its prior motion to dismiss this adversary proceeding. There, the IRS argued, among other things, that the trustee's claims under 11 U.S.C. § 544 are barred by sovereign immunity, relying on *In re Anton Motors, Inc.*, 177 B.R. 58 (Bankr.D.Md.1995). The motion to dismiss was denied in an Order/Memorandum dated August 14, 2000 (*In re C.F. Foods, L.P.*, 2000 WL 1160847 (Bankr.E.D.Pa.2000)) by my predecessor, then Judge David A. Scholl. In that Order/Memorandum, then Judge Scholl wrote:

11 U.S.C. § 106(a) effects a complete waiver of sovereign immunity as to the federal government in actions under 11 U.S.C. § 544. The *Anton Motors* court, while appreciating this fact, 177 B.R. at 61–64, nevertheless held that a separate analysis of a state governmental unit's potential immunity under applicable state law was necessary, *Id.* at 64–67. Here, however, the governmental entity is the federal government itself, and no applicable state law creating any immunity for the federal government is cited. Rather, the Defendant returns to its earlier argument... that the Trustee's purported need to exhaust administrative remedies renders the government "immune" from such claims until the necessary exhaustion of remedies is effected. We have already indicated, however...that we believe that the exhaustion argument is overcome by effect of 11 U.S.C. § 505(a).

*C.F. Foods, L.P.*, 2000 WL 1160847 at *2.

The sovereign immunity argument raised in response to the Trustee's Cross–Motion for Summary Judgment presents a view through a prism different from that addressed in the August 14, 2000 decision of my predecessor. The IRS now argues that the trustee cannot bring an action under 12 Pa.C.S.A. § 5104(a), made applicable to this case by 11 U.S.C. § 544, because § 544 permits the trustee to avoid only a transfer of an interest in a debtor's property that is voidable under applicable law by an unsecured creditor.[15] An unse-

---

14. The United States' sovereign immunity is based upon the well-settled principle that "the United States is immune from suit save as it consents to be sued..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Koss v. United States*, 69 F.3d 705, 707 (3d Cir.1995) quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), in turn quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941).

15. Section 544(b)(1) states:

(b)(1) Except as provided in paragraph (2) [applicable to charitable contributions], the trustee may void any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

cured creditor could not bring a suit against the IRS under 12 Pa.C.S.A. § 5104(a) outside of bankruptcy court because the unsecured creditor would be barred from doing so by the sovereign immunity doctrine (unless it could show that the government waived sovereign immunity). Without the existence of an unsecured creditor who has the right to commence such an action, the IRS argues, there is no cause of action that the trustee can pursue through the use of § 544 of the Bankruptcy Code. In other words, § 544 should not be read to confer upon the bankruptcy trustee a right not available to an unsecured creditor under the state law the trustee is attempting to employ.

 The trustee asserts that I am precluded from considering this issue by virtue of the "law of the case doctrine," since sovereign immunity has already been raised and decided. While I have been (and remain) reluctant to accept invitations to revisit decisions of my predecessor, the law of the case doctrine does not prevent this Court from considering the IRS's revised sovereign immunity argument. The Third Circuit's view on the law of the case doctrine was recently summarized by the District Court for New Jersey as follows:

> The law of the case doctrine "limits the extent to which an issue will be reconsidered once the court has made a ruling on it." *Fagan v. City of Vineland,* 22 F.3d 1283, 1290 (3d Cir.1994) ... The law of the case doctrine is not jurisdictional, but rather recognizes that "as a matter of comity a successor judge should not lightly overturn decisions of his predecessors in a given case." *Fagan,* 22 F.3d at 1290. The doctrine applies both to transfers from judge to judge in the same district...and to transfers from district to district... For intra-district transfers, the decision to

follow the law of the case is within the district court's discretion....

> In *Fagan,* the Third Circuit held that "[t]he law of the case doctrine operates only to limit reconsideration of the same issue." 22 F.3d at 1290. *Fagan* involved the liability of a municipality and individual police officers for injuries caused during the course of a high-speed police chase. The original judge denied the summary judgment motion of the municipality and the officers. The case was then transferred to another judge within the same district, and the municipality and officers once again moved for summary judgment. The second judge granted this motion. On appeal, plaintiffs argued that the second judge's action violated the law of the case doctrine. The Third Circuit held that the second judge had discretion to revisit the issue. The court noted that while the original judge addressed the issue under a "reckless or callous indifference" standard, the second judge applied a "shocks the conscience" standard, a standard that the Third Circuit adopted. Therefore, the court held that because the second judge "did not reconsider the same issue decided by [the original judge], the law of the case doctrine posed no obstacle to [the second judge]'s action." 22 F.3d at 1290.

*Waste Conversion, Inc. v. Sims,* 868 F.Supp. 643, 649 (D.N.J.1994). Likewise, in this case, I am not considering the same sovereign immunity argument that was before then Judge Scholl, because the IRS is asserting a different basis for its alleged sovereign immunity. Moreover, questions of jurisdiction are a threshold matter (*In re Grace Community, Inc.,* 262 B.R. 625, 629 (Bankr.E.D.Pa.2001)) and can be raised at any time (*In re Custom Distribution Services, Inc.,* 224 F.3d 235, 240 n. 3 (3d Cir.2000)). Accordingly, I will address

**84**

the substance of the IRS's sovereign immunity claim.

**(2)**

 The doctrine of sovereign immunity prevents suits against the United States except when Congress has "unequivocally expressed" its consent to be sued. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992). Bankruptcy Code Section 106 [16] was amended by Section 113 of the Bankruptcy Reform Act of 1994 to state unequivocally Congress' "... intention to abrogate sovereign immunity from bankruptcy causes of action for both the United States and the states, as to both nonmonetary and monetary judgments, except punitive damages." *In re Anton Motors, Inc.*, 177 B.R. 58, 63 (Bankr.D.Md.1995). The purpose of amending § 106 was, at least in part, in response to two United States Supreme Court decisions [17] holding that the previous

version of § 106 did not unambiguously waive sovereign immunity with respect to allowing monetary recovery against governmental units. HR Rep 103–834, 103rd Cong., 2nd Sess 13–15 (Oct. 4, 1994), U.S.Code Cong. & Admin.News 1994, p. 3323; 140 Cong. Rec. H10766 (Oct. 4, 1994). The House Report for the Reform Act of 1994 further explains the reasons behind the amendment as follows:

> This amendment expressly provides for a waiver of sovereign immunity by governmental units with respect to monetary recoveries as well as declaratory and injunctive relief. It is the Committee's intent to make section 106 conform to the Congressional intent of the Bankruptcy Reform Act of 1978 waiving sovereign immunity of the States and Federal Government in this regard. Of course the entire Bankruptcy Code is applicable to governmental units where sovereign immunity is not or cannot be

---

**16.** Section 106(a) of the Bankruptcy Code provides as follows:

> **§ 106. Waiver of sovereign immunity.**
> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
> (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 505, 506, 510, 522, 523, 524, 525, 542, 543, **544**, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 928, 929, 944, 1107, 1141, 1142, 1143, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title. [emphasis added]
> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order

or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with provisions and limitations of section 2412(d)(2)(A) of title 28.
(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

**17.** *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989).

asserted. As suggested by the Supreme Court, section 106(a)(1) specifically lists those sections of title 11 with respect to which sovereign immunity is abrogated. This allows the assertion of bankruptcy causes of action, but specifically excludes causes of action belonging to the debtor that become property of the estate under section 541.

*Id.*

■ Accordingly, Congress amended § 106(a) by setting forth specific Bankruptcy Code sections, including § 544, to express, clearly and unequivocally, its intent that governmental units be subject to monetary judgments under those sections. Further, as recognized by the court in *Anton Motors*, the amended Section 106(a):

> abrogates, not just waives, the sovereign immunity of governmental unit. . . . The significance of abrogation, excluding constitutional issues that are not raised here, is that it constitutes a total override of Eleventh Amendment immunity and federal sovereign immunity, to the extent that Congress has made its intent unmistakably clear. . . . Waiver, by contrast, is triggered by some activity of a state or federal governmental entity by which it consents to be sued in a federal court.

*Anton Motors,* 177 B.R. at 62. Although the constitutionality of § 106 may sometimes be in dispute with respect to abrogating a state governmental unit's sovereign immunity defense,[18] there is no question that Congress can abrogate the federal government's sovereign immunity. *See In re Thibodaux,* 201 B.R. 827, 832 (Bankr.N.D.Ala.1996). Since the governmental unit involved in this matter is the IRS, I need not address the thornier issues regarding the interplay between the Eleventh Amendment and § 106.[19]

By including § 544 in the list of Bankruptcy Code sections set forth in § 106(a), Congress knowingly included state law causes of action within the category of suits to which a sovereign immunity defense could no longer be asserted. Section 544, together with its predecessor section in the Bankruptcy Act (§ 70e), have long had the primary effect of granting the trustee the power to avoid transfers under state law provisions concerning fraudulent transfers. *See* 3 NORTON BANKR. L. & PRAC.2d § 54:6 (1997).

The effect of including § 544 in § 106(a) grants the trustee rights that are more broad than those possessed by an unsecured creditor pursuing a similar state law cause of action. However, there is precedent for Congress granting to a bankruptcy trustee such broad rights under § 544.

**18.** *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)(holding that Section 2710(d)(7) of the Indian Gaming Regulatory Act (25 U.S.C. § 2710(d)(7)) cannot grant jurisdiction over a state that does not consent to be sued, despite Congress's clear intent in that section to abrogate the states' sovereign immunity, because the Indian Commerce Clause (U.S. Const., Art. I, § 8, cl. 3), pursuant to which the Indian Gaming Regulatory Act was enacted, does not grant Congress the power to abrogate the states' sovereign immunity); *In re Sacred Heart Hosp. of Norristown,* 133 F.3d 237 (3d Cir.1998), as amended, (Feb. 19, 1998)(hold-

ing that Congress cannot abrogate state sovereign immunity pursuant to any of its Article I powers and, because Bankruptcy Code § 106(a) was enacted pursuant to the Bankruptcy Clause in Article I of the U.S. Constitution, it is unconstitutional to the extent that it purports to abrogate state sovereign immunity, despite Congress's clear intent to do so).

**19.** It should be noted that the main case relied upon by the IRS (*Anton Motors, supra.*), involves a state governmental unit and, therefore, its sovereign immunity analysis can be distinguished from this case.

When enacting the Bankruptcy Code of 1978, the Committee Report for § 544 stated that Congress's intent was to retain the controversial rule of a 1931 U.S. Supreme Court case, *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931), which held that a trustee could avoid an entire transfer under § 544(b) without regard to the size of the claim of the unsecured creditor whose rights and powers the trustee was asserting.[20] "In other words, an entire transfer can be set aside even though the creditor's claim is nominal and, moreover, the recovery of the trustee is for the benefit of all creditors including those who had no right to avoid the transfer." 5 COLLIER ON BANKRUPTCY ¶ 544.09[5] (1998).

There is some allure to the logic of the IRS's argument that because an unsecured creditor has no right to sue the IRS on a state law fraudulent transfer claim, the trustee is left with no right to which he may succeed. However, even if there was any ambiguity to § 106(a)—and I find that there is none—other considerations still weigh heavily against the result sought by the IRS. Any recovery by the bankruptcy trustee will benefit *all* of the debtor's creditors, including the IRS. Moreover, enhancement of the rights of others to the detriment of the federal government, particularly in the government's capacity as tax collector, is commonplace, including within the Bankruptcy Code itself. *See,*

*e.g.,* 11 U.S.C. §§ 724, 726. *See also* 26 U.S.C. §§ 6321, 6323.

Accordingly, in light of the unambiguous language of § 106, as supported by the legislative history; the specific inclusion of § 544 in § 106(a); the precedent for Congress providing a trustee with rights that are greater than those possessed by the unsecured creditor upon whom a § 544(b) claim is based; and the policy reasons favoring recovery for the benefit of all creditors, the IRS's sovereign immunity argument must fail.

### B.

The IRS also argues that summary judgment in favor of the trustee cannot be granted because a genuine issue of material fact exists. Counts I, IV, VII, X, XIII, XVI, XIX, XXII, and XXV of the trustee's complaint[21] each contain a paragraph which avers as follows:

> This transfer was made with the actual intent to delay, hinder or defraud entities to which C.F. Foods was indebted, or became indebted, on or after the date that said transfer was made.

In its answer to the Amended Complaint, the IRS admitted these allegations. However, in its answer to the Second Amended Complaint, the IRS clarified its admissions to those paragraphs as follows:

> The United States admits the allegations contained in paragraph 35[22] with clarifi-

---

**20.** The Report of the Commission on the Bankruptcy Laws of the United States recommended overruling *Moore v. Bay* when working on drafts of the 1978 Bankruptcy Code. The National Conference of Bankruptcy Judges sought to retain the rule of *Moore v. Bay*. For three years, this rule was the subject of much debate. When the Bankruptcy Code was enacted, it was silent with regard to the rule. However, the Committee Reports state that the intention of Congress was to retain the rule of *Moore v. Bay*. 5 COLLIER ON BANKRUPTCY ¶ 544.09[5] (1998).

**21.** In the Trustee's Amended Complaint, paragraphs 34, 48, 62, 76, 90, 104, 118, 132, and 146 set forth this averment. In the Trustee's Second Amended Complaint, paragraphs 35, 49, 63, 77, 91, 105, 119, 133, and 147 set forth this averment.

**22.** The IRS presented the same answer for paragraphs 49, 63, 77, 91, 105, 119, 133, and 147 of the Second Amended Complaint.

cation. While some portion of the transfer was made with the actual intent to delay, hinder or defraud entities to which C.F. Foods was indebted, or became indebted, some portion of the transfer was made to pay taxes legitimately owed by the debtor.

▮▮▮ Generally, factual assertions admitted by a party in an answer or response are considered judicial admissions which are conclusively binding upon the party who made them. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983). Once a pleading is superceded by an amended answer or response, however, the admissions in the superceded pleading, as a general rule, lose their binding force. *Id.* at 1396, n. 5. A party may introduce superceded admissions into evidence to be considered as adverse evidentiary admissions by the fact-finder. *Id.* at 1396; *See also Borel v. United States Casualty Co.*, 233 F.2d 385, 387–88 (5th Cir. 1956).[23]

Because the IRS has amended its answer, a genuine issue of material fact arises, *i.e.* whether some of the funds transferred from the debtor to the IRS represented legitimate income tax payments on behalf of the partners for the "Sales Two" portion of the debtor's business which the trustee admits operated with "real employees, real inventory, and real sales deliveries" and possibly $5 million of sales. (*See* Background, *supra.*, paragraphs 13 and 14). The trustee's request for summary judgment must be denied.

Accordingly, both the IRS's Motion for Partial Summary Judgment and the Trustee's Cross–Motion for Summary Judgment will be denied.[24]

---

23. The IRS's amended answer at this stage does not cause delay or prejudice to the trustee and, in that respect, is quite different from cases in this Circuit in which defendants were not permitted to amend substantially their answers (1) by adding counterclaims just days before trial that would require new rounds of discovery *Owens–Illinois, Inc. v. Lake Shore Land Co., Inc.*, 610 F.2d 1185 (3rd Cir.1979); or (2) that, in response to an amended complaint which added two defendants, added numerous new parties as counterclaim defendants and pages of new allegations that were already being addressed in related litigation.

*Regent National Bank v. Dealers Choice Automotive Planning, Inc.*, 1998 WL 961377 (E.D.Pa.1998).

24. I also note from review of the docket that no comprehensive scheduling order has been entered in this adversary matter, so the accompanying order will also fix a date for a scheduling conference at which the parties should be prepared to discuss their remaining pre-trial needs in anticipation of the entry of a comprehensive pre-trial order.