An order will be entered consistent with this Memorandum.

**IN RE: DBSI, INC., et al., Debtors.**

**James R. Zazzali, as Trustee of the DBSI Estate Litigation Trust, Plaintiff-Appellee,**

v.

**United States of America, Defendant-Appellant.**

**CASE NO. 08-12687 (PJW) (Bankr. D. Del.), CASE NO. 1:13-cv-497-S-MJP**

**ADV. PROC. NO. 1:13-CV-00086-MJP**

United States District Court, D. Idaho.

Signed March 31, 2015

Christopher Walsh, Michael F. Quinn, Mark Barry Conlan, Gibbons, P.C., Newark, NJ, Keely E. Duke, Kevin Alan Griffiths, Duke Scanlan & Hall, PLLC, Boise, ID, for Plaintiff-Appellee.

Ari D. Kunofsky, Washington, DC, for Defendant-Appellant.

## ORDER ON APPEAL FROM UNITED STATES BANKRUPTCY COURT

Marsha J. Pechman, United States District Judge

The above-entitled Court, having received and reviewed:

1. Appellant United States of America's Opening Brief (Docket No. 27),

2. Plaintiff–Appellee's Answering Brief (Docket No. 28),

3. Appellant United States of America's Reply Brief (Docket No. 29),

4. Notice by United States of Subsequent Authority (Dkt. No. 30), and all related declarations, exhibits and relevant parts of the court record, rules as follows:

IT IS ORDERED that the ruling of the Bankruptcy Court is AFFIRMED and the interlocutory appeal is DENIED.

IT IS FURTHER ORDERED that the parties are to submit a Joint Status Report within 10 days of the filing of this order advising the Court by what steps and in which court this matter will be brought to a conclusion.

### Background

In the course of the bankruptcy proceedings, funds were identified as tax payments made by Debtors to the federal government (a total of $17,054,042). A small portion of those funds were transferred within the two-year window for asserting fraudulent-transfer actions under 11 U.S.C. § 548(a)(1) (and the propriety of the recovery of those funds is not contested by the Appellant). The remainder of the transfers occurred within two to four years before the Debtors' bankruptcy, which required the Trustee to seek to recover them using § 544(b).

Appellant sought to dismiss the § 544(b) claims against the transfers on the grounds that the Trustee could not identify a creditor who could bring a claim against them under non-bankruptcy law since sovereign immunity had not been waived as to such actions. The Bankruptcy Court denied that motion. (*Zazzali v. Swenson (In re DBSI, Inc.*), 2011 WL 607442 (Bankr. D.Del. Feb. 11, 2011)). Appellant filed a notice of interlocutory appeal, which was granted, and the matter is thus before this Court.

### Discussion/Analysis

11 U.S.C. § 544(b) provides:

[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor·holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(c) of this title.

At issue in this appeal is the intersection of § 544(b) and 11 U.S.C. § 106(a)(1), which states that:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

1) Sections … 544 …

■ § 544(b) requires the existence of an unsecured creditor of the debtor who has the requisite nonbankruptcy cause of action. *Official Comm.· of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.),* 226 F.3d 237, 243 (3rd Cir.2000). In this case, the non-bankruptcy cause of action is found in the Idaho fraudulent transfer law.

Appellant's position is: Idaho fraudulent transfer laws do not (in fact, cannot) waive the U.S. government's sovereign immunity, therefore there is no "unsecured creditor of the debtor who has the requisite nonbankruptcy cause of action," thus no one for the Trustee to step into the shoes of. The Delaware Bankruptcy Court disagreed, finding that "Congress, when it abrogated sovereign immunity as to § 544 causes of action, intended to include those state law causes of action available under § 544(b)(1)." *In re DBSI, Inc.,* 2011 WL 607442 at *4 (Bankr.D.Del.). In other words "Congress has fully abrogated sov-

ereign immunity" for suits under § 544(b)(1). *Id.* at *1.

The Bankruptcy Court enunciated two rationales for its finding. First,

§ 544 has a long history of empowering bankruptcy trustees to bring certain state law causes of action. [*citation omitted*] Therefore, when Congress included § 544 in the list set forth in § 106(a)(1), it "knowingly included state law causes of action within the category of suits to which a sovereign immunity defense could no longer be asserted." [*citation omitted*]

*Id.* at *4. Furthermore, the "applicable law" referred to in § 544(b) includes state law and requiring a trustee to demonstrate that sovereign immunity has been waived every time the trustee seeks to use state law for § 544(b) purposes would render the abrogation of sovereign immunity under § 106 "almost meaningless" and would not "comport[ ] with the purpose and use of" § 544(b)(1). The. Court found that "this interpretation recognizes the deep-rooted power of a trustee to bring certain state law causes of action," a power which had been delegated to trustees since the Bankruptcy Act of 1898. *Id.* at *4–5.

At the time the underlying order was entered (2011), the court noted that other cases addressing the issue had "uniformly [found] that § 106(a)(1) abrogates federal sovereign immunity from § 544(b)(1) suits." *Id.* at *4.[1] Since that time, the Seventh Circuit has adopted the opposing interpretation in *In re Equip. Acquisition Res., Inc.,* 742 F.3d 743 (7th Cir. 2014)("EAR"). Even while acknowledging that "we diverge from all the bankruptcy

---

1. *In re C.F. Foods, L.P.,* 265 B.R. 71 (Bankr. E.D.Pa 2001); *Menotte v. United States (In re Custom Contractors, LLC),* 439 B.R. 544 (Bankr.S.D.Fla 2010); *Tolz v. United states (In re Brandon Overseas, Inc.),* 2010 WL 2812944, 2010 Bankr.LEXIS 2326 (Bankr. S.D.Fla. July 16, 2010), *Sharp v. United States (In re SK Foods, L.P.),* No. 10–2117, 2010 Bankr.LEXIS 5254 (Bankr.E.D.Ca. July 7, 2010).

and district courts to consider the issue," the Seventh Circuit found that § 106(a)(1) does not confer upon the trustee the right to bring a fraudulent transfer suit against the federal government where sovereign immunity would prevent a regular unsecured creditor from doing so. *Id.* at 746.

The Court agrees with the Trustee that *EAR* does not represent the better-reasoned position on this issue. For one thing, the Seventh Circuit departed from previous rulings on this issue in concluding that the question of federal agency liability (sovereign immunity or no sovereign immunity) required a two-part inquiry:

> The first inquiry is whether there has been a waiver of sovereign immunity. No issue there; all parties agree, based on § 106(a)(1), that there has been. But once this question is answered, the second inquiry comes into play—that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief.

*Id.* at 747. The case upon which the Seventh Circuit relied for this "secondary sovereign immunity analysis" rule (*FDIC v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)) involved a very specific provision in the Federal Tort Claims Act that expressly required a secondary analysis in certain cases, *Id.* at 475–76, 114 S.Ct. 996. There was no generalized holding in *Meyer* requiring a secondary analysis of underlying substantive law in every statutory scheme.

Further, the Seventh Circuit's interpretation of how § 544(b) intersects with the abrogation of sovereign immunity under § 106(a)(1) conflicts with the way federal statutory waivers of sovereign immunity work in other contexts; e.g., the Tucker Act (28 U.S.C. § 1491), which waives sovereign immunity for claims founded upon the Constitution, an act of Congress or the Executive, plus any federal contract or any

non-tort damages. Ruling on the Tucker Act in *U.S. v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), the Supreme Court said:

> [Under the Tucker Act] a court must inquire whether the source of the substantive law can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained. In undertaking this inquiry, a court need not find a separate waiver of sovereign immunity in the substantive provision ... The Tucker Act itself provides the necessary consent. *Id.* at 218, 103 S.Ct. 2961.

By analogy, § 106(a)(1) provides the necessary consent to be sued and no further analysis of the underlying substantive law is necessary to permit the Trustee to recover any fraudulently transferred funds from the federal government.

Read in the context of the overarching purpose of bankruptcy law and the legislative history behind the statutory scheme, the Seventh Circuit's (and the federal government's) reading of the two statutes would in fact render § 106(a)'s abrogation of sovereign immunity "almost meaningless." *In re DBSI, Inc.*, 2011 WL 607442 at *4–5 (quoting *In re Custom Contractors, LLC*, 439 B.R. 544, 549 (Bankr. S.D.Fla 2010). The government argues that "Congress' intention and the related legislative history are not relevant, because sections 106 and 544(b) are not ambiguous." (Dkt. No. 28, Reply at 6.) The Court disagrees—in addition to the evidence that reasonable jurists from different jurisdictions have arrived at opposite conclusions, the briefing in this motion presents 60 pages of hard-fought analysis demonstrating that there are good arguments going both ways on how these statutes should be read together. A resort to legislative intent and legislative history is entirely appropriate.

■ Even the *EAR* court acknowledged that § 106(a)(1) is an explicit abrogation of federal sovereign immunity. *See* 742 F.3d at 746–47. The rule in the Ninth Circuit is that the meaning of a statute is derived "from context, and this requires reading the relevant statutory provisions as a whole." *Carpenters H & W Trust Funds v. Robertson (In re Rufener Constr.)*, 53 F.3d 1064, 1067 (9th Cir.1995). As all the cases prior to *EAR* found, legislative history clearly establishes a Congressional intent to waive sovereign immunity as to "bankruptcy causes of action." H.R. Rep 103–834, 103rd Cong., 2nd Sess. 13–15 (Oct. 4, 1994); 140 Cong.Rec. H10766 (Oct. 4, 1994).

■ The reasoning is based on equitable principles which this Court finds compelling—if the government is permitted to file claims in bankruptcy against a debtor's estate, it is only fair that it submit itself to suit on behalf of the estate and the other creditors. *See* S.Rep. No. 95–989, at 90 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5876. As the Tenth Circuit has stated: "[The] waiver of sovereign immunity is based on equity; in essence, it would be unfair for a governmental unit to participate in the distributions of a bankruptcy case while at the same time shielding itself from liability." *In re Franklin Saving Corp.*, 385 F.3d 1279, 1290 (10th Cir.2004).

■ The Supreme Court has directed that the Bankruptcy Code be read as a comprehensive scheme and that courts be guided by its "object and policy." *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Accepting the government's argument (and the *EAR* ruling) would undermine one of the basic objectives of the entire statutory scheme of bankruptcy: "the equitable distribution of the debtor's property among the debtor's creditors." *Central Va. Comm. College v. Katz*, 546 U.S. 356, 364, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006). Allowing the federal government to retain nearly $17 million of defrauded investor money to the detriment of the remaining creditors does not further the "object and policy" of the Bankruptcy Code.

■ Further, principles of statutory construction favor the Trustee's reading of § 106(a)(1). As the District Court in the original (overturned) *EAR* ruling noted, an earlier enacted law (in this case, § 544(b) which was enacted in 1978) must give way to the more recently enacted statute (§ 106(a)(1), which was enacted in 1994) if the two are seen to be in conflict. *See In re EAR*, 451 B.R. 454, 466 (Bankr.N.D.Ill. 2011), *aff'd*, 485 B.R. 586 (N.D.Ill.2013), *rev'd*, 742 F.3d 743 (7th Cir.2014); *also, Araya v. McLelland*, 525 F.2d 1194, 1196 (5th Cir.1976).

■ Congress is presumed to be aware of existing laws when it enacts later legislation. *Bowen v. Massachusetts*, 487 U.S. 879, 896, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). The government does not dispute that § 106(a)(1) abrogated sovereign immunity as to trustee actions under § 544, and § 544(b) must be read in that context; i.e., although a claim may be subject to federal sovereign immunity in a nonbankruptcy action, Congress intended that such immunity be waived in the bankruptcy forum because it enacted § 106(a)(1) with a reference to § 544 knowing that § 544 included such state law claims. The Trustee cites the analysis of a Florida bankruptcy court which captures the illogic of the government's argument:

Why would Congress explicitly waive sovereign immunity for all other avoidance actions under the Bankruptcy Code, and include a waiver of sovereign immunity for actions under section 544 knowing that section 544 encompasses state law theories, but then require a

separate waiver of sovereign immunity for the necessary state law component ...? The argument offered by the United States defies logic.

*In re Pharmacy Distrib. Svcs.,* 455 B.R. 817, 821 (Bankr.S.D.Fla.2011). This goes to the heart of the observation by the Delaware Bankruptcy Court that requiring an additional sovereign immunity waiver every time a trustee relied on state law would render the general abrogation· in § 106(a)(1) "almost meaningless."

The government asks the Court to distinguish between § 544(a) (which has no "actual creditor" requirement) and § 544(b), but § 106(a)(1) refers only to "544"—neither the government nor the Seventh Circuit cite any authority which supports a reading of that inclusion as anything other than a Congressional intent that sovereign immunity is abrogated for the entire statute. The Supreme Court has admonished Congress· to be very specific when abrogating sovereign immunity. *See U.S. v. Nordic Village Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). In fact, § 106(a)(1) was enacted in response to *Nordic Village,* further bolstering the Trustee's argument that when Congress included § 544 in its abrogation of sovereign immunity, it included *all* of § 544.

The government misstates the language of § 106(a)(1) to argue that "Section 106 only waives sovereign immunity 'to the extent' allowed under section 544." (Dkt. No. 27, Opening Brief at 6.) That is not what the statute says. It states: "[S]overeign immunity is abrogated as to a governmental unit *to the extent set forth in this section,*" which is not the same thing as "subject to any limitations set forth in the following sections." The argument that § 544(b) somehow requires a second waiver of sovereign immunity for state law causes of action is simply not persuasive.

 The government attempts to argue that the Trustee's fraudulent transfer claim is pre-empted by virtue of Internal Revenue Code Section 7422 (26 U.S.C. § 7422; "§ 7422").[2] There are two flaws in this assertion. First, while Congress may preempt state law through legislation where there are conflicting federal and state statutes or Congress intends to occupy the field "exclusively" (*Kurns v. R.R. Friction Prods. Corp.,* —— U.S. ——, 132 S.Ct. 1261, 1265–66, —— L.Ed.2d —— (2012) (citations omitted)), the Trustee's § 544(b) actions under federal bankruptcy law are federal causes of action, not "state law claims" subject to preemption in this fashion. *Goldstein v. Eby–Brown, Inc. (In re Universal Mktg.),* 459 B.R. 573, 576 (Bankr.E.D.Pa.2011) (citation omitted).

Second, the money at issue here is not an "internal revenue tax alleged to have been erroneously or illegally assessed or collected"—the Trustee is prosecuting an unlawful, avoidable, fraudulent transfer. He is not seeking a "refund" on behalf of any individual debtor; he seeks a money judgment pursuant to §§ 544(b) and 550 on behalf of the DBSI bankruptcy estates. These claims are not subject to § 7422 preemption.

### Conclusion

This Court AFFIRMS the conclusion of the Delaware Bankruptcy Court that the sovereign immunity defense implicated by a § 544(b)(1) action was abrogated by Congress and on that basis DENIES the United States' appeal of that decision.

---

**2.** "No suit ... shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... or of any sum alleged to have been excessive or in any manner wrongfully collected, until" an administrative claim for refund has been filed with the IRS.

The Court further requires the parties to submit, within 10 days of the filing of this order, a Joint Status Report advising the Court by what steps and in which court this matter will be brought to a conclusion.

The clerk is ordered to provide copies of this order to all counsel.

