**Frank E. WHITE, Plaintiff-Appellee,**

v.

**ARCO/POLYMERS, INC. and Oil, Chemical & Atomic Workers Union, AFL–CIO, Local No. 4–227, Defendants-Appellants.**

No. 82–2505.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1983.

Baker & Botts, Richard R. Brann, Douglas W. Sanders, Houston, Tex., for ARCO.

Bray & Watson, Patrick M. Flynn, Houston, Tex., for OCAW.

Mandell & Wright, Sidney Ravkind, Houston, Tex., for plaintiff-appellee.

Before WISDOM, REAVLEY, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

The district court found that ARCO/Polymers, Inc. (ARCO) fired employee Frank E. White without just cause, in violation of its collective bargaining agreement with the Oil, Chemical & Atomic Workers International Union, Local 4–227, AFL–CIO (OCAW), and that OCAW violated its duty of fair representation to White

by dropping his discharge grievance short of arbitration. ARCO and OCAW contend that the district court clearly erred in finding that White was a nonprobationary employee entitled to the protection of the just cause and arbitration provisions of the collective bargaining agreement. We agree. The judgment of the district court is reversed.

## I.

On November 11, 1974, White, a black man, began work for ARCO as a probationary Operator Trainee in the Styrene Unit of ARCO's Harris County, Texas petrochemical manufacturing plant. The terms and conditions of White's employment were set by ARCO's 1973–75 collective bargaining agreement with OCAW Local 4–227. That contract provided that new employees, like White, were on probation for the first ninety days worked. Probationary employees were not covered by the "just cause for discharge" and "grievance procedure" provisions of the contract. Management could fire them simply for general dissatisfaction with their progress, efficiency, or attitudes; if it did, they had no right to expect the Union to champion their claims for redress. In mid-February 1975, ARCO and OCAW signed a new two-year collective bargaining agreement. The 1975–77 version of their contract extended the probationary period from ninety days worked to 120 days worked. All other pertinent provisions remained the same. On May 8, 1975, ARCO fired White. It gave as its reasons White's supervisors' reports that White had now shown initiative in learning his duties, that he did not adequately perform the duties assigned to him, and that he did not get along with his co-workers.

White promptly filed a written grievance through OCAW Local 4–227 in which he claimed that his termination was without just cause. The Union pressed White's grievance through the first three steps of the grievance procedure,[1] but at each step ARCO denied the grievance. At the conclusion of the third step, the Union decided that ARCO was right in contending that White was a probationary employee, concluded that ARCO had shown reasons adequate to justify its decision not to make him a permanent employee, and elected to withdraw the grievance.

In late June 1975, White filed a charge against the Union with the Equal Employment Opportunity Commission (EEOC) claiming that the Union had discriminated against him because of his race. In late August 1976, the EEOC issued a determination finding that no reasonable cause existed to believe that the Union had violated Title VII of the Civil Rights Act of 1964 in the manner alleged. White filed this action the following day.

White's original complaint charged that ARCO and OCAW had discriminated against him on the basis of race, in violation of 42 U.S.C. § 1981,[2] and that OCAW had breached its duty of fair representation, in violation of 29 U.S.C. § 151, *et seq.* White's legal theory supporting the fair representation charge was that, notwithstanding the fact that he had been fired on the last day of the 120-days worked probationary period, he was entitled to the benefit of the 90-days worked probationary period (and thus the just cause and arbitration provisions) of the contract in force at the time he was hired. In November 1980 White filed a proposed pre-trial order and proposed findings of fact and conclusions of law. In both, he admitted that he had been terminated on the final day of the 120-days worked probationary period; in both, he adhered to his assertion that his probation-

---

1. Under the 1975–77 Union contract, the filing of a written grievance constituted the first step of the grievance procedure. The second step of the grievance procedure was a meeting between the general foreman and chief committeeman. The third step was an appeal to the plant manager. The fourth step was arbitration.

2. He also included class allegations on behalf of similarly situated black and Mexican-American employees at the ARCO plant. White subsequently filed an unopposed motion to dismiss class allegations. The motion was promptly granted.

ary period ended with his ninetieth day worked. ARCO and OCAW's proposed pretrial order stated their agreement with White's concession that he had been terminated on the final day of the 120-days worked probationary period. They defended by denying that racial discrimination had played any part in their respective decisions, and by arguing that White's probationary term was governed by the 1975–77 collective bargaining agreement. In September 1981, White filed an amended complaint. It was in all respects identical to his original complaint, except that he added to the paragraph charging OCAW with breach of its duty of fair representation the assertion that "Plaintiff[ ] had a contractual right to be evaluated under the 90-day contract provision, and Defendant ARCO violated that right." At trial, White testified that he was discharged after the expiration of the 90-days worked probationary period which, according to White, was the only probationary period applicable to him.[3] At no time did White testify that his discharge occurred after the 120-days worked probationary period. Neither did any other witness. To the extent that it was discussed, the testimony was to the contrary.

So matters stood until White submitted his post-trial proposed findings of fact and conclusions of law. In that memorandum, White reasserted his earlier-espoused theory that he was legally entitled to consideration under the superseded contract's 90-days worked probationary period. But in addition he contended for the first time that he had completed the 120-days worked probationary period. He calculated the total number of working days elapsed between his first day and his discharge at 125. From that computation and from his claim of right to the original period, he argued that by any measure he was a nonprobationary employee on the date of his discharge. ARCO met White's new factual assertion head on. Apparently eschewing argument that his earlier admissions, and failure to raise this theory during trial, barred its assertion post-trial, it contended that White's computation was erroneous in its failure to deduct holidays and absences in order to arrive at days actually worked.

The district court found that neither ARCO nor OCAW discriminated against White because of his race, and entered judgment for the defendant on White's section 1981 claim.[4] But as to his breach of contract and fair representation claims, the district court found for White wholly on the basis of his new theory. Taking judicial notice of the calendar and subtracting weekends and holidays listed in the Union contract, it concluded that White was fired on his 125th day of work. The court buttressed this conclusion by reference to a

---

3. The pertinent portions of White's testimony are as follows:

Q. Can you tell from the last article, looks like 28, what the term of this new agreement is, when it was effective?

A. This agreement shall be effective from January 8, 1975 through January 7, 1977 and thereafter for—from year to year unless terminated by either party.

Q. It sounds like they finally reached an agreement in February and then made it effective back to January 8, 1975, isn't that right?

A. I don't know if that's right or not. Because I'm working with the same union and we changed a lot of things in the contract and a lot of things weren't changed on the existing contract.

Q. That's the way it happens in negotiations.

A. Right. *But if I was on my same job, the ones who was hired under 90-day contracts, this 90 days binds regardless when*

*January comes they get a new 120 days then under the old contract as far as the probation period.*

Q. There is no doubt in your mind that this new contract the one for 1975–77 had 120 working days probation in it?

A. Right. I know that. *But that's the one I was hired under.*

Q. *You were hired under contract that expired January 7, 1975?*

A. *Right.*

\* \* \* \* \* \*

Q. You didn't know about the 120 days probation, you didn't know about that?

A. *I wasn't concerned really because I wasn't under 120 days probation. I was going by what my representative I have tells me. I was under a 90 day probation period. I wasn't concerned at the time with 120 days.*

4. White does not appeal that decision.

written evaluation of White made by an ARCO employee and entered into evidence by ARCO, in which the employee stated that he had kept up with the day's work by White and White had "made it" through probation. On the basis of that evidence, the court found that White was a nonprobationary employee on the date of his discharge. The court's legal conclusions rested on that finding. The district court decided that "in making the decision to fire Mr. White, ARCO used standards appropriate for a probationary employee but inappropriate for a permanent employee subject to termination only for just cause." As to OCAW, the district court found that "[t]he Union withdrew the grievance because it accepted without investigation the Company's contention that Mr. White was a probationary employee and therefore not entitled to go through the grievance procedure" and because it believed that "Mr. White was not performing well enough to become a permanent employee." The court concluded that "in accepting without question the Company position that Mr. White was on probation when fired, in failing to ascertain that Mr. White actually had completed probation at the time of his termination, and in dropping his grievance on the unfounded assumption that he was not entitled to go through the grievance procedure, the Union failed to represent Mr. White fairly." It held ARCO liable for breaching the contract and OCAW liable for violating its duty of fair representation to White.

ARCO and OCAW responded with a joint motion for reconsideration. They pointed out that White did not claim, either before or during trial, that he had completed the 120-days worked probationary period, but to the contrary had repeatedly admitted that he was terminated on the final day of that period. They noted that an accurate computation of days worked would require deduction of days absent. Finally, they asked that the court reopen the record to allow them to document the fact that White had not completed the 120-day period. The court refused, stating that it believed that White's pleadings and testimony gave adequate notice that his completion of the 120-

day period was at issue; it also rested its decision on ARCO's failure to assert, in response to White's post-trial proposed findings of fact, that the presence of the days-worked issue was a surprise. ARCO and OCAW appeal.

## II.

As the district court correctly observed, the burden of adducing adequate, persuasive evidence fell to plaintiff White. In order to prevail on his claims that ARCO breached the Union contract and that OCAW failed fairly to represent him, White first had to establish that he was not a probationary employee and hence was entitled to the protection of the just cause and grievance procedure provisions of the contract. White ultimately relied on the assertion that he had worked more days than those constituting the probationary period in order to establish the critical prerequisite of nonprobationary status; the district court predicated its conclusions of liability on a finding that he indeed had completed the lengthier period. The question is whether that factual finding is clearly erroneous.

The Supreme Court has held that a finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 1788 n. 14, 72 L.Ed.2d 66 (1982) *quoting United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). This Court has elaborated on that explication with explanation that clear error exists where (1) the findings are without substantial evidence to support them, (2) the court misapprehended the effect of the evidence, and (3) if, although there is evidence which if credible would be substantial, the force and effect of the testimony, considered as a whole, convinces the Court that the findings are so against the great preponderance of the credible testimony that they do not reflect or represent

the truth and right of the case. *Merchants National Bank v. Dredge General G.L. Gillispie*, 663 F.2d 1338, 1341 (5th Cir.1981), *cert. dismissed*, 456 U.S. 966, 102 S.Ct. 2263, 72 L.Ed.2d 865 (1982), *citing Western Cottonoil Co. v. Hodges*, 218 F.2d 158, 161 (5th Cir.1954).

■ Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them. *Myers v. Manchester Insurance & Indemnity Co.*, 572 F.2d 134 (5th Cir.1978); *State Farm Mutual Auto Insurance Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir.1968); *Mull v. Ford Motor Co.*, 368 F.2d 713, 716 (2d Cir.1966).[5] ARCO and OCAW did not insist on strict adherence to this precept: instead of arguing when the issue came up that it was foreclosed by White's earlier admissions that he had been dismissed on the final day of the 120-days worked probationary period, they argued that White's computation of the number of days he had worked was incorrect because it omitted days absent. By failing to contend that White's admissions barred his subsequent assertion of the contrary position, they effectively waived the argument that the issue was irreversibly settled. *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 498 (5th Cir.1982); *Genusa v. City of Peoria*, 619 F.2d 1203, 1208 (7th Cir.1980). But although White's admissions can no longer be considered conclusive, they do still operate as adverse evidentiary admissions properly before the district court

in its resolution of the factual issue. *Frederic P. Wiedersum Associates v. National Homes Construction Corp.*, 540 F.2d 62, 65 (2d Cir.1976); *see ante* note 5.

■ The relevant question is, then, whether White introduced at trial evidence sufficient to show that, notwithstanding his prior concessions to the contrary, he actually had worked more than 120 days.[6] Our examination of the record leads us to the firm conclusion that he did not. At trial, he did not testify that he had worked more than 120 days, *see ante* note 3. The only witnesses mentioning the point at all were defense witnesses who testified that White had not completed the 120-days worked probationary period when he was terminated; White did not cross-examine those witnesses on the point. That the Union processed his grievance through the first three levels cannot be considered to raise an inference that he had finished probation: the district court specifically found that the Union did not consider his employment status until completion of the third level, when it accepted ARCO's position that he was still on probation when discharged. Neither can we attach persuasive import to the defendant's failure to introduce records showing that White missed work on scheduled working days. To do so would, in the absence of the defense's need to refute affirmative evidence that he indeed had completed probation, effectively shift the burden of proof

---

**5.** Admissions made in superseded pleadings are as a general rule considered to lose their binding force, and to have value only as evidentiary admissions. 3 Moore's Federal Practice & Procedure ¶ 15.08[7] at 15–128 (1982), *citing Borel v. United States Casualty Co.*, 233 F.2d 385, case II (5th Cir.1956). But where, as in this case, the amendment only adds allegations, deleting nothing stated in the prior pleadings, admissions made in the prior pleadings continue to have conclusive effect. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981).

**6.** Careful examination of the district court's decision discloses that it accepted the defendants' interpretation of the probationary period to include only days actually worked, rather than working days elapsed since hire.

Before trial, White's action was consolidated with a similar one brought by former ARCO employee Freddie Woods. Woods was hired on March 11, 1974 and discharged on July 19, 1974, in part for excessive absenteeism. Woods' attendance records, submitted into evidence by ARCO in support of its claim that it fired Woods for legitimate business reasons, showed that of 98 working days between his hire and discharge, he was absent 9 and worked 89. The district court found that Woods was discharged before he completed the 90-day probationary period then indisputably in effect. Refusal to accept the defendants' interpretation of the probationary period would have mandated a finding that Woods had attained permanent status before he was fired.

to the defense.[7] The only indication in the record that White had obtained permanent status was a co-worker's statement, contained in a performance evaluation submitted by ARCO, that it "looked like" White had made it through his probationary period and "if" he made it, the company had "messed up." The comment was not mentioned at trial. There is no evidence on what sources, if any, the employee relied in making his comment.

Review of the record as a whole leads us to the conclusion that there is not substantial evidence to support the finding that White completed his probationary period before he was terminated. That finding, and the district court's conclusions of liability predicated on it, must fall. This includes the finding of liability against the Union as well as the finding of liability against the Company.

▋ The district court found that the Union violated its duty of fair representation to White by dropping his grievance short of arbitration on the unfounded assumption that he was a probationary employee not entitled to the grievance procedure. A breach of the statutory duty of fair representation occurs only when a union acts arbitrarily, discriminatorily, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). In the instant case, the Union took White's grievance through the first three steps of the grievance procedure. *See ante* 720 F.2d 1393 & n. 1. Only after proceeding through the third step and hearing testimony from supervisors and employees that White's performance was unsatisfactory did the Union elect to withdraw the grievance. At this point, the Union concluded that ARCO was correct in contending that White was a probationary employee and that ARCO had offered adequate reasons to justify its decision to discharge him.[8] The district court found that the Union did not act in good faith because it did not undertake an independent investigation of White's probationary status. The court stated that it would have been a simple task for the Union to tabulate the number of days that White worked. Despite the simplicity of the task, however, any failure to calculate the number of days White worked does not establish bad faith on the part of the Union in the instant case. It was not until White filed his post-trial proposed findings of fact and conclusions of law that he contended for the first time that he had completed the 120-day probationary period. Since prior to that time White did not contest that he had been fired on the last day of the 120-day period and argued only that the 90-day period applied to him, the Union's failure to investigate the number of days he had worked could not constitute action in bad faith. The district court incorrectly concluded, therefore, that the Union breached its statutory duty of fair representation.

### III.

▋ White has not asked this Court to rule on his original argument that he was legally entitled to the protection of the 90-days worked probationary period. Neither has he asked that the case be remanded to the district court for its consideration of that argument if the court's initial disposition of this case is reversed. He has abandoned the argument. *Richardson v. City of Indianapolis,* 658 F.2d 494, 499 (7th Cir. 1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982). In this circumstance, we can only reverse the district court's judgment as to both the Company and the Union.

REVERSED.

7. White and the district court draw a negative implication from the fact that ARCO submitted co-plaintiff Woods' attendance record, but did not offer White's. The comparison is flawed. Woods' attendance was in dispute because that was one of the reasons given by ARCO for his discharge, *see ante* note 6. White was discharged for reasons other than absenteeism. As neither the pleadings, the course of trial, nor defensive needs required the submission of White's attendance records, no inferences can be drawn from their absence.

8. Pursuant to the collective bargaining agreement in the instant case, probationary employees were not entitled to the grievance procedures.