**In re Scott D. KASKEL and Tonya Kaskel, Debtors.**

No. 01–01474.

United States Bankruptcy Court, D. Idaho.

Oct. 17, 2001.

Harold Q. Noack, Jr., Boise, Idaho, for debtors.

Warren S. Derbidge, Assistant United States Attorney, for Internal Revenue Service.

Bernie R. Rakozy, Boise, Idaho, Chapter 13 Trustee.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

### BACKGROUND AND FACTS

Scott and Tonya Kaskel ("Debtors") filed a voluntary petition for chapter 13 relief on May 17, 2001. That same date, they filed schedules which disclosed no interest whatsoever in real property, and personal property worth a total of $15,227.51. This personal property included several vehicles: a 1980 Datsun pickup truck ($2,400.00); a 1995 Hyundai automobile ($3,000), a Yamaha "4–wheeler" ($1,000.00); and two motorcycles. The motorcycles were a 1993 Yamaha PW 50 at $700.00, which Debtors indicated "Belongs to Daughter", and a 1998 Kawasaki KX 60 listed at $1,300.00, which they stated "Belongs to Son." According to schedule I,

Debtors' son, Trevor, is 9 years old and their daughter, Megan, is 6 years old.

Also on May 17 Debtors scheduled the Internal Revenue Service ("IRS") as an unsecured priority creditor for 1998 through 2000 taxes in a total amount of $9,117.56. Debtors showed IRS as also holding a general unsecured claim of $11,153.02 for 1996 and 1997 taxes.

Debtors' proposed chapter 13 plan of May 17 called for 60 monthly payments of $230.00. Among other things this plan provided for treatment of the IRS priority claim. However, it erroneously set that claim out in paragraph 4(c)(1) which, under this District's form plan deals with classified general unsecured claims; priority tax claims are dealt with, in the form plan, in paragraph 4(a)(4).

The IRS objected to confirmation noting that, pursuant to its proof of claim filed June 18, 2001 (Claim No. 12), it had a secured claim based upon the filing and recording of a notice of federal tax lien in Gem County on April 11, 2001. The IRS thus asserted a secured claim of $15,227.51, consistent with Debtors' schedule B, and an unsecured priority claim of $4,959.76.

Debtors soon thereafter filed an objection to the IRS claim asserting that there was no real property in Gem County to which the claim could attach given a pre-bankruptcy foreclosure in April, 2001 and that the secured claim overstated the amount of Debtors' interest in personal property to which the lien could attach.[1] On July 23 Debtors amended their schedules. This turns out to be the first of four amendments to the schedules which were filed over the course of roughly one month.

---

1. In regard to the real property, Debtors admit that they were left with some real property after the foreclosure but they have asserted, without contradiction, that this remnant real property is valueless.

This first amendment, Doc. No. 14, reduced the personal property by $1,350.00 to a total of $13,877.51. This was accomplished by reduction of the value of the Datsun pickup from $2,400.00 to $1,050.00.

The second amendment occurred on July 30. *See* Doc. No. 15. This amendment did not change schedule B but rather amended schedule A and J. At the same time, Debtors filed an amended plan (Doc. No. 19) which treated the IRS as secured only in the Datsun (at $1,050.00) and the Yamaha 4–wheeler (at $1,000.00).

On August 13, Debtors again amended schedule B. *See* Doc. No. 24. This amendment dropped the valuation of personal property to $10,570.51, an additional reduction of $3,307.00. Debtors reduced the Yamaha 4–wheeler from $1,000.00 to $250.00, reduced the PW 50 from $700.00 to $150.00, and reduced the KX 60 from $1,300.00 to $650.00. Debtors also reduced the value of a cat and dog from $25.00 to $12.50, reduced apparel from $400.00 to $50.00, reduced wedding rings from $150.00 to $50.00, and essentially reduced all miscellaneous personal property by half their originally scheduled values.

The IRS amended its proof of claim. *See* Claim No. 22, filed August 21, 2001. The amended claim asserts a secured claim of $8,781.51 regarding the 1996 through 1997 taxes, and an unsecured priority claim of $9,291.99 for tax years 1998 through 2000. This claim also asserts a general unsecured claim of $4,812.94. This amendment generated Debtors' objection to claim which forms the primary issue addressed by today's decision.

On August 27 yet another amendment to schedule B was filed. *See* Doc. No. 28. This one reduced the total declared value of the property to $10,410.51, a drop of $160.00. This was accomplished by eliminating the PW 50 from schedule B entirely and also eliminating a $10.00 aquarium.

Three days later, schedule I was amended increasing Debtors' projected disposable income to $342.00.[2] Hearing was held on August 30 on the issues of confirmation of the Debtors' proposed chapter 13 plan and on Debtors objection to the amended proof of claim of the IRS. Confirmation was denied without prejudice. The objection to claim was taken under advisement subject to post hearing briefing by both parties. Those briefs have now been filed.

Also subsequent to the August 30 hearing, Debtors filed an amended plan. *See* Doc. No. 37, filed September 26. This amended plan made several changes from the July 30 plan. It raises each of the 60 monthly payments called for under the plan from $281.00 to $325.00. It substantially increases the fees proposed to be allowed Debtors' counsel. It decreases what Debtors believe should be paid the IRS as a secured claim from $2,050.00 to $863.09. It treats the IRS priority claim (though still improperly under the plan provisions for classified general unsecured claims) in an amount of $9,491.99. And it adds treatment of LeAnne Meyers as a secured creditor with an interest in the Hyundai.

Upon review of the evidence and record, and evaluation of the briefs of the parties and other applicable authorities, the Court enters the following decision. The same constitutes its findings of fact and conclusions of law in this contested matter. Rules 9014, 7052.

---

2. The original disposable income was $230.00 and it had been raised to $280.00 by virtue of the amendment on July 30 to schedule J.

## DISCUSSION AND DISPOSITION

The sole issue before the Court is Debtors' objection to the amended claim of the IRS. While many confirmation issues have been addressed by the parties, either directly or inferentially, confirmation of the plan before the Court on August 30 was denied. All confirmation issues under § 1325 and related Code provisions will be considered when Debtors' amended plan properly comes before the Court for consideration.

 *Lundell v. Anchor Construction Specialists, Inc.*, 223 F.3d 1035 (9th Cir. 2000), recently addressed the burdens placed on litigants following the filing of a proof of claim and the assertion of an objection to that claim:

> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes *"prima facie* evidence of the validity and the amount of the claim" pursuant to Bankruptcy Rule 3001(f). *See also* Fed. R.Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. *See* Adv.Comm. Notes to Fed.R.Bankr.P. 9014.
>
> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.2, at 502–22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP

1995), *aff'd,* 91 F.3d 151, 1996 WL 393533 (9th Cir.1996).

> To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm,* 931 F.2d at 623.

. . .

> "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by the preponderance of the evidence." *In re Consol. Pioneer,* 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *In re Holm,* 931 F.2d at 623.

223 F.3d at 1039. With this in mind, the Court will address the matters in issue.

### 1. Motorcycles

 Debtors contend that the motorcycles "belong to" the children and therefore are not property of the estate nor properly subject to the lien of the IRS. The Court has considered the entirety of the evidence submitted on the subject and concludes the Debtors have failed to prove their proposition that these items are the property of a six year old and nine year old to the exclusion of their parents.[3] The Court finds that both motorcycles are property of the estate. § 541(a)(1). The Court also has not been provided with anything to indicate that these items would not be subject to the IRS' lien.

---

**3.** The children were actually younger when the parents purchased the items.

### 2. Stay violation

■ Debtors argue that the amendment by the IRS of its claim during this bankruptcy constituted a violation of the automatic stay. Debtors have similarly failed to establish this proposition.

The automatic stay does not apply to proceedings before the Bankruptcy Court itself including the filing of pleadings and claims. *See In re Sammon,* 253 B.R. 672, 680–81 (Bankr.D.S.C.2000). To the extent Debtors assert violation of the automatic stay as a component of their objection to the IRS' amended claim, that assertion will be overruled.[4]

### 3. Amount of claim

■ By virtue of the amendment, the IRS reduced its secured claim from $15,227.51 to $8,781.51. This tracked the Debtors' own reduction of the declared value of their assets on schedule B through the August 13 amendment. These amendments resulted in declared assets of $10,570.51 as of that date. The IRS' secured claim also reflected subtraction of $1,789.00, which was the amount of the claim of LeAnne Meyers secured by the Hyundai. *See* Claim No. 18, filed July 16, 2001.

In consideration of the standards set forth in *Lundell,* the Court finds and concludes Debtors have not sustained their burden in disputing that at least $8,781.51

of available value exists for the IRS' secured claim.

First, Debtors contend that the motorcycles should not be included as subject to or within the secured claim. The Court has above found to the contrary.

Debtors next contend that the secured claim should be reduced because LeAnne Meyers filed an amended claim on August 24, Claim No. 23, asserting a $3,000.00 value for the vehicle.[5] *See* Debtors' Brief, Doc. No. 36, at p. 5, n. 2.[6]

The Court is, at the present time, not persuaded by Debtors' argument concerning the secured claim on the Hyundai. Determining the equity in the vehicle which might be available for the benefit of the IRS under its lien requires a determination of the validity and extent of the secured claim of Meyers. Neither her original nor her amended proof of claim contain any documents regarding the underlying indebtedness owed her by Debtors. The only thing attached to these proofs of claim is a copy of the certificate of title on the vehicle, reflecting a lien recorded March 13, 2001. This date is within 90 days of the filing of the bankruptcy petition on May 17. Additional documentation would be required of this creditor in order to establish the bona fides of the underlying debt and also to determine whether or not the perfection of

4. Debtors did not file a motion or other pleading directly attacking the alleged violation of stay. They only alluded to this issue in their objection to claim. However, were such a motion to have been presented, it would suffer from the same defect.

5. Debtors have contended all along that the Hyundai was worth $3,000.00. That figure appears in their initial schedule B. But despite wholesale reductions in the values of all other personal property assets, Debtors' value for this vehicle has never changed. That this is but a coincidence, and that Debtors accu-

rately valued this one item while substantially missing the mark on everything else they own, strains credulity. A more plausible explanation is that reduction in asset values was designed to reduce the IRS' secured claim, but that Debtors saw no need to reduce the Hyundai's value because the existence of the lien was sufficient to hold the IRS at bay.

6. Why Meyers believed it was worth $1,789.00 as reflected in her first claim is unexplained, but she now appears to accept the benefit of Debtors' higher valuation.

the lien would withstand scrutiny under the Code. It would be premature to validate this aspect of the objection raised by Debtors to the IRS' proof of claim until the validity of Meyers' secured claim is established.[7]

### 4. Good faith

■ Both parties make arguments concerning the existence or lack of good faith as reflected by the *seriatim* amendments of Debtors' schedules, particularly schedule B. Good faith, however, is an issue to be addressed at the time of confirmation in light of the totality of circumstances presented on the record and by the evidence. *In re Johnson*, 262 B.R. 831, 838–39, 01.2 I.B.C.R. 72, 73–74 (Bankr.D.Idaho 2001). The Court will reserve final determination on this issue until the amended plan comes before it for confirmation.

However, the Court can observe at this time that the record reflects an issue which can legitimately be argued. Debtors made numerous amendments to their schedules within a period of only a month, each time decreasing the declared value of their estate. While a final determination of their motivation or intent cannot be rendered on the present record, the effect of their amendments was to reduce already modest valuations of personal property with the consequent effect of reducing the secured claim of the IRS. Debtors have not shown that some other reason exists which provided the impetus to amend.

■ That Debtors have asserted that the value of their estate is less than first alleged, and even that the IRS has for the moment accepted the bulk of those valuations, is not conclusive. The comments of the Court in *In re Bohrer*, 266

B.R. 200 (Bankr.N.D.Cal.2001) are apropos:

> Bohrer appears to suffer from a substantial misapprehension as to the nature of schedules. Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions. In the *Matter of Gervich*, 570 F.2d 247, 253 (8th Cir.1978). A debtor may not adopt a cavalier attitude toward the accuracy of his schedules by arguing that they are not precise and correct. *In re Duplante*, 215 B.R. 444, 447 n. 8 (9th Cir. BAP 1997). When schedules are amended the old schedules do not, as Bohrer seems to argue, become nullities. The only effect of amendment of a schedule is that the original schedule no longer has the binding, preclusive effect it might otherwise have. It is still fully subject to consideration by the court as an evidentiary admission. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n. 5 (5th Cir.1983).

*Id.* at 201. *See also*, Reply Brief of the United States, Doc. No. 39, at page 4, and cases there cited.

■ The Court today overrules Debtors' objection to the amended proof of claim of the IRS. However, no ultimate adjudication is made at this time as to the value of the IRS' secured claim. A process is available to both this creditor and Debtors to establish the value of property which constitutes collateral for a secured claim. The Court has, within that process, the ability to consider all evidence regarding value of the assets, including prior admissions of Debtors in their schedules, and is not obligated to accept only the

---

**7.** Were it ripe for adjudication at this time, the Court would simply note that Debtors have failed to establish that a valid and en-

forceable secured claim exists in favor of Meyers sufficient to remove that asset from the reach of the IRS lien. *Lundell, supra.*

most recent assertion under the amended schedules.

### 5. Priority claim

█ The Court has considered the argument made by Debtors (without citation to authority) that the amended IRS claim impermissibly shifts amounts from the category of secured claim to that of priority unsecured claim. The Court has not been persuaded by Debtors that the objection is well taken. The consequential impact on the priority tax claims is a direct result of the Debtors' own machinations in an attempt to reduce their secured tax debt. *Accord, United States v. Johnston,* 267 B.R. 717, 720–24 (N.D.Tex.2001) (amendment to timely IRS claims permitted under Rule 7015 and § 105(a); IRS restructured components of its claim by virtue of and in response to debtor's own conduct). This objection will also be overruled.

### CONCLUSION

Based upon the foregoing, Debtors' objection to the amended proof of claim of the IRS, Claim No. 22, filed August 21, 2001, shall be overruled. This ruling will be without prejudice to any confirmation issues which may properly come before the Court. It is also without prejudice to any further amendments of the IRS' claim and/or proceedings for valuation of secured claim which may be presented on the evidence after due and proper notice. The ruling is also without prejudice to reconsideration in light of any adjudication of the claims of creditor LeAnne Meyers.

An appropriate order will be issued.