**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 12, 2011

No. 10-20253

Lyle W. Cayce
Clerk

In the Matter of: JAMES C. ROLLINGS,

Debtor

---

REX-TECH INTERNATIONAL, LLC,

Appellant

v.

JAMES C. ROLLINGS; W. STEVE SMITH,

Appellees

---

Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. 4:09-cv-00195

---

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellant Rex-Tech International, LLC ("Rex-Tech") appeals the district court's affirmance of the bankruptcy court's finding that James C. Rollings ("Rollings"), appellee and debtor in this bankruptcy adversary proceeding, owned

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20253

three pieces of oilfield equipment.  Because we find no errors of law and no clearly erroneous findings of fact, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Rollings worked for Rex-Tech, an oilfield equipment repair and sales company, from 1999 through 2003.  In 2000 and 2001, Rollings served as Rex-Tech's production manager, overseeing equipment repairs.  In 2003, Rex-Tech ceased operations and filed for Chapter 13 bankruptcy, and Rollings' employment was terminated.  Shortly thereafter, on September 4, 2003, Rollings, through an attorney, sent a letter to Rex-Tech listing eight items at Rex-Tech's facility which he claimed to be his, including a set of bookshelves with workbooks and manuals, a rotary table with its associated equipment, and a National 1320M mechanical drawworks ("drawworks"), which allegedly included a drum shaft assembly ("drum shaft").  These items were exempt from the public foreclosure sale of Rex-Tech's assets on October 22, 2003.

On January 31, 2004, Rollings filed for Chapter 13 bankruptcy.[1]  On May 10, 2004, Rollings claimed ownership of a 14" ID 5' long ram hydraulic cylinder ("cylinder") at Rex-Tech's facility in an amended schedule of assets that he filed in his Chapter 7 bankruptcy proceedings.  W. Steve Smith, the Trustee of Rollings' estate ("Trustee"), demanded the return of all of the items Rollings claimed were his, pursuant to Rex-Tech's duty to return estate assets.  By April 29, 2005, Rex-Tech had surrendered the rotary table to Rollings' Trustee and some furniture and books to Rollings, but insisted that it would not turn over the remaining equipment without documentation of ownership from Rollings.

---

[1] The case converted to a Chapter 7 liquidation on June 14, 2004.  *See In re James Clinton Rollings*, No. 04-31511-H3-7, 2008 Bankr. LEXIS 993 (Bankr. S.D. Tex. Mar. 31, 2008).  There were also state court proceedings that involved some of the equipment.  *See Rex-Tech Int'l et al. v. Rollings*, No. 2003-38112-A (55th Dist. Ct., Harris County, Tex.).

No. 10-20253

On May 18, 2005, Rex-Tech brought a "Complaint for Declaratory Judgment and Determination of Interests in Property" against Rollings and his estate, asking the bankruptcy court to determine the ownership of the disputed items and to order Rollings to provide documentation showing that the items were his. Rollings and the Trustee asked the bankruptcy court to order Rex-Tech to turn over the drawworks, drum shaft, and cylinder to the estate.[2] On November 18, 2008, the bankruptcy court commenced a bench trial to determine the ownership of the disputed assets. Seven witnesses testified over the course of the three-day trial.

Rollings testified that he used his personal funds to purchase the cylinder in 2000 from IRI International Corporation ("IRI"),[3] his former employer. He testified that he purchased the drawworks, which included the drum shaft, the following year, from Texas International ("TI") with a $10,000 personal check. According to Rollings, he stored these items at Rex-Tech's facility with Rex-Tech's permission.

John Fessenden ("Fessenden") testified that as a plant manager at IRI, he sold a hydraulic cylinder to Rex-Tech, not to Rollings individually. He identified an invoice from IRI to Rex-Tech for the cylinder dated January 26, 2000. But, the invoice had a generic description and inaccurate terms, and Fessenden did not know the purchase order number and did not personally receive payment. Moreover, according to Fessenden, IRI sold dozens of cylinders while Fessenden was employed there, according to Fessenden's testimony.

---

[2] The drawworks was sold on May 8, 2008, for $47,000 and the proceeds were placed in escrow pending a final determination of this action. The drawworks had been "cannibalized," according to Rex-Tech.

[3] In his testimony Rollings referred to IRI as Cardwell International, but at the relevant time IRI had already purchased Cardwell International.

3

No. 10-20253

James E. Petersen, Jr. ("Petersen"), the manager and majority stockholder of Rex-Tech, identified an invoice for a used hydraulic cylinder dated January 26, 2000, and a check in the amount of $1082.50, relating to that invoice, dated March 7, 2000, payable to IRI.  He also identified checks for $60,000 and $125,000, payable to CV International.  But, the bankruptcy court found that the purposes of these checks were not proved.  Moreover, Petersen acknowledged that he was not involved in Rex-Tech's daily operations.  The bankruptcy court also found that Petersen's "credibility was impaired by his self interest and his personal dislike of Debtor."

The bankruptcy court concluded that Rex-Tech failed to show by a preponderance of the evidence that it owned the disputed assets.  It determined that Rollings' testimony that he purchased the cylinder and the drawworks with the drum shaft as a component was credible.  On January 16, 2009, the bankruptcy court issued an order deeming the disputed assets to be the property of the Trustee.

Rex-Tech appealed the bankruptcy court's judgment and the district court affirmed.  The district court held that the bankruptcy court correctly placed the burden of proof on Rex-Tech because Rex-Tech made an affirmative claim in its declaratory judgment action.  The district court also found that the bankruptcy court's findings of fact sufficiently laid out the basis for its decision, though it refused to consider the bankruptcy court's supplemental findings, which the bankruptcy court had issued after the district court signed an order divesting the bankruptcy court of jurisdiction.  Finally, the district court rejected Rex-Tech's argument that the bankruptcy court clearly erred in its findings of fact, and held that each of the bankruptcy court's conclusions were supported by the evidence.

Rex-Tech now appeals to this court, claiming that the bankruptcy court erred in assigning the burden of proof to Rex-Tech, in refusing to apply a presumption of ownership to Rex-Tech, and in not treating Rollings' sworn

4

No. 10-20253

bankruptcy schedules as judicial admissions.  Rex-Tech also argues that the court clearly erred in its findings regarding the testimony of Fessenden and Petersen, and in according Rollings' testimony greater weight than contemporaneous documents.  Finally, Rex-Tech contends that the bankruptcy court made insufficient findings for appellate review because it failed to address the credibility of the testimony of Rollings, Richard Hellinger ("Hellinger") (the general manager of TI) and Rex Shepperd ("Shepperd") (a half-owner of that company), the authenticity of Rollings' alleged drawworks sales contract, and Rollings' testimony relating to the drum shaft.

## STANDARD OF REVIEW

"In reviewing cases originating in bankruptcy, we 'perform the same function, as did the district court: Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed de novo.'"  *In re Soileau*, 488 F.3d 302, 305 (5th Cir. 2007) (quoting *In re Berryman Prods.*, 159 F.3d 941, 943 (5th Cir. 1998)).

## ANALYSIS

### 1. Burden of proof

Rex-Tech argues that the court should have imposed on Rollings the burden of proving that he owned the disputed items.  The bankruptcy court held that Rex-Tech, as the party seeking relief, had the burden of proving ownership because "[i]n a declaratory judgment action, the party seeking relief bears the burden of proof."  We agree.

"[T]he bankruptcy court has the power to issue declaratory judgments when the matter in controversy regards the administration of a pending bankruptcy estate."  *Sears, Roebuck and Co. v. O'Brien*, 178 F.3d 962, 964 (8th Cir. 1999); *see* 28 U.S.C. § 157(b)(1),(2)(a) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11. . . . Core proceedings include, but are not limited to . . . matters concerning the

administration of the estate"). The parties do not dispute that Texas law governs the ownership dispute. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). But, though the district court, in reviewing the issue of burden of proof, cited Texas law, we believe that federal law governs the preliminary issue of what burden of proof applies here. As stated above, our jurisdiction over this matter stems from federal bankruptcy law. Thus, we do not look to state law in determining the burden of proof here. *See In re Willcox*, 329 B.R. 554, 562 (Bankr. D.S.C. 2005), *rev'd on other grounds*, 467 F.3d 409 (4th Cir. 2006) (applying federal law in determining what burden of proof applies in declaratory judgment action in a property dispute related to the administration of a bankruptcy estate); *In re Big V Holding Corp.*, 267 B.R. 71, 90-91 (Bankr. D. Del. 2001) (where court had jurisdiction under 28 U.S.C. § 157(a) and (b)(1), it relied on federal case law for conclusion that burden of proof is on the plaintiff seeking declaratory judgment though the parties agreed New Jersey law controlled the underlying contract interpretation question); *cf. Liberty Mut. Ins. Co. v. Sweeney*, 216 F.2d 209, 211 (3d Cir. 1954) ("[T]his matter of burden of proof [in a declaratory judgment action] is one in which the federal court in a diversity case will follow state decisions.").[4]

---

[4] In any case, whether we apply Texas or federal law has little effect on how we place the burden, as Texas and federal courts apply the same principle in determining the burden of proof in declaratory judgment actions. *See  Harkins v. Crews*, 907 S.W.2d 51, 58 (Tex. App.–San Antonio 1995, writ denied) ("Generally, the burden of proof in a declaratory judgment action is on 'the party who, on the pleadings, asserts the affirmative claim, and who in the absence of evidence will be defeated, and is not controlled by the position of the parties on the docket as plaintiff or defendant in the declaratory action.'" (quoting *Mitchell v. Rancho Viejo, Inc.*, 736 S.W.2d 757, 760 (Tex. App.–Corpus Christi 1987, writ ref'd n.r.e.) (internal quotation marks and citation omitted))).

No. 10-20253

"It is a fundamental rule that the burden of proof in its primary sense rests upon the party who, as determined by the pleadings, asserts the affirmative of an issue. . . ." *Pacific Portland Cement Co. v. Food Machinery & Chemical Corp.*, 178 F.2d 541, 547 (9th Cir. 1949) (placing burden of proof on party that brought the declaratory judgment action because it sought affirmative relief of declaration of nonliability and relief from overcharges and also because that party presented extensive evidence at trial). Here, Rex-Tech made an affirmative claim in asking the bankruptcy court to determine the ownership of the disputed property.

We also decline to place the burden of proof on Rollings because Rex-Tech accepted the risk of proving its case by filing suit. In a similar case, *In re Willcox*, 329 B.R. at 562, a debtor filed a declaratory action asking the court to determine the ownership of historic papers the debtor found in his closet. The *In re Willcox* court found that the burden of proof fell on the debtor because he brought the declaratory judgment action, explaining, "the burden of proof in declaratory judgment actions lies, as a general principle of law, with the moving party who is held to 'have assumed the risk of nonpersuasion.'" 329 B.R. at 562 (quoting 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, *FEDERAL PRACTICE AND PROCEDURE* § 2770 (3d ed. 1998)); *see In re Weller*, 316 B.R. 708, 711 (Bankr. W.D. Mo. 2004) (implying that party seeking declaratory judgment when the matter pending involves administration of a bankruptcy estate always bears the burden of proof, stating, "[t]he party seeking a declaratory judgment must bear the burden of proof in these proceedings"). Because we construe Rex-Tech's complaint as asserting an affirmative claim, and because Rex-Tech assumed the risk of non-persuasion by filing the

declaratory judgment action, we conclude that the bankruptcy court did not err in placing the burden of proof on Rex-Tech.[5]

## 2. Legal presumption of ownership

Nor was it error for the bankruptcy court to refuse to apply a legal presumption of ownership to Rex-Tech. The bankruptcy court held that "given that there was a dispute *ab initio* as to the ownership of the property in dispute . . . it is not clear from the evidence that Rex-Tech 'possessed' the property." The bankruptcy court also provided that "[e]ven if a presumption of ownership is accorded to Rex-Tech as a result of the location of the disputed items, the presumption is rebutted by Debtor's credible testimony as to his purchase of the property."

Under Texas law, "[o]ne in possession (or control) of property is presumed to be the owner of it." *Smith v. Briggs*, 168 S.W.2d 528, 531 (Tex. Civ. App.–San Antonio 1943, writ ref'd w.o.m.) (citation omitted); *see Hickey v. Couchman*, 797 S.W.2d 103, 110 (Tex. App.–Corpus Christi 1990, writ denied) (presumption applied where evidence showed assets were in possession of the debtor); *Worth Tool & Die Co. v. Atlantis Electronics Corp.*, 398 S.W.2d 656, 657 (Tex. Civ. App.–Dallas 1965, writ dism'd by agr.) ("At the time the suit was filed and the writ levied the property was in possession of appellant, which fact alone gives rise to the inference that appellant had a legal right to such possession."). Rex-Tech argues that the bankruptcy court incorrectly interpreted *Chenoworth v. Flannery*, 202 S.W.2d 480, 481 (Tex. Civ. App.–Amarillo 1947, no writ), to require Rex-Tech to show exclusive possession to trigger the presumption. The *Chenoworth* court refused to apply the presumption based solely on the evidence

---

[5] In any case, if the bankruptcy court had placed the burden of proof of ownership on Rollings, it would still have concluded that Rollings owned the property. The bankruptcy court's finding that Rollings' evidence of ownership rebutted any presumption that Rex-Tech owned the property constituted a finding that Rollings had demonstrated proof of ownership by a preponderance of the evidence.

that a "deposit box was maintained in [one] name" and the disputed property was found in the envelope upon which that person's name was written. *Id.* at 481-82. Rather, the *Chenoworth* court held, "because the evidence was to the effect that the deposit box was maintained for the benefit of both," "[i]t was a joint tenancy," and "it contained numerous articles belonging to each of them," such that no exclusive possession was shown. *Id.* at 481. Citing *Chenoworth*, the bankruptcy court found that the presumption of ownership based on possession did not apply to Rex-Tech in this case because Rex-Tech allowed employees to store and work on their own equipment at the Rex-Tech facility.

We agree with the bankruptcy court that the presumption does not apply here. The presumption is to be used when there is no "evidence to the contrary" regarding possession. *See Bradshaw v. Ashley*, 180 U.S. 59, 63 (1901) ("If there be no evidence to the contrary, proof of possession, at least under a color of right, is sufficient proof of title."). Rex-Tech is obviously correct that the evidence that Rex-Tech permitted Rollings to store his property on the Rex-Tech facility is not as indicative of joint control over the property as the evidence of a joint tenancy in *Chenoworth*. Furthermore, there was also undisputed evidence that Rex-Tech used and profited from the hydraulic cylinder and drum shaft.[6] But, this case is more similar to *Chenoworth* than to those cases that have applied the presumption, because in those cases there was no evidence indicating that the party in possession did not actually own the disputed items. *Compare Chenoworth* 202 S.W.2d at 481 *with Cathey v. Shields*, 385 S.W.2d 889, 893 (Tex. Civ. App.–Austin 1965, writ ref'd n.r.e.) ("The fact that the money was in a building on his land raises a presumption that the money belonged to the deceased."); *Hickey*, 797 S.W.2d at 110 (applying presumption where items were at the debtor's condominium). The evidence that Rollings was permitted to store

---

[6] Rex-Tech explains that it integrated the hydraulic cylinder into a vertical press that generated income for Rex-Tech, and it traded the drum shaft.

items on Rex-Tech's property while he was an employee there undermines the contention that Rex-Tech had control of the property. The fact that Rex-Tech, with Rollings' permission, used the cylinder to profit does not eliminate the fact that there was a plausible reason, aside from ownership, that Rex-Tech's facility housed Rollings' oilfield equipment. In light of the evidence that Rex-Tech permitted Rollings to use its facility for storage, the presumption of ownership does not apply in this case.[7]

### 3. Judicial admissions

Rex-Tech argues that the bankruptcy court erred by failing to determine that Rollings' statements in his bankruptcy schedule and amended bankruptcy schedules were binding judicial admissions. Rollings did not list any oilfield equipment when he originally filed his bankruptcy case on January 31, 2004, nor when he amended the schedule on February 14, 2004. In both schedules he affirmatively swore that he did not own equipment or machinery of any kind. Approximately four months later, in May 2004, he amended the petition to include the rotary table, drawworks, and cylinder, and listed them as exempt from his bankruptcy estate. Rex-Tech asserts that because Rollings did not list the drawworks on his first two schedules, and never listed the drum shaft in any of his six amended bankruptcy schedules, he has made a judicial admission that he does not own these items. *See, e.g.*, *In re Sissom*, 366 B.R. 677, 697 (Bankr. S.D. Tex. 2007) (explaining that statements in bankruptcy schedules can be treated as judicial admissions). We will briefly address the issue, though we need not, as Rex-Tech never argued to the bankruptcy court or district court that

---

[7] Because the bankruptcy court decided in the alternative that Rollings rebutted the presumption of ownership, a conclusion that the presumption of ownership applied to Rex-Tech would not be dispositive of the issue of ownership. *See Bullard v. Oatman*, 271 S.W. 422, 423 (Tex. Civ. App.–San Antonio 1925, no writ) (possessor would not "recover against the claims of any one who [] establish[es] a better right to the property than that of the possessor").

the statements in the bankruptcy schedules should be considered binding judicial admissions. *See Ingalls Shipbuilding v. Fed. Ins. Co*, 410 F.3d 214, 228 (5th Cir. 2005) ("It is the obligation of the party to direct the court's attention to the facts and law supporting its argument . . . [and] failure to raise the argument properly before the district court [relieves] our obligation to address it.").

"Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions." *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001). "Admissions made in superseded pleadings are as a general rule considered to lose their binding force, and to have value only as evidentiary admissions." *White v. ARCO/Polymers, Inc.,* 720 F.2d 1391, 1396 n.5 (5th Cir. 1983) (citation omitted). Rollings' original schedules are superseded by the third amended schedule. The statements in the original schedules are therefore not binding admissions, though they may be considered as evidence.[8] Because Rex-Tech did not argue to the courts below that Rollings' failure to claim the drum shaft on his bankruptcy schedule foreclosed him from claiming that he owned the drum shaft, he cannot now do so. "By failing to contend that [a party's] admissions barred his subsequent assertion of the contrary position, [the opposing parties] effectively waived the argument that the issue was irreversibly settled." *White*, 720 F.2d at 1396. Consequently, under *White*, this evidence is admissible, but is not a binding judicial admission. *See id.* We find that the bankruptcy court did not err on this issue.

### 4. Clear error in weighing the evidence

Rex-Tech argues that the bankruptcy court clearly erred in weighing the testimony of "disinterested witnesses" Fessenden and Petersen, and the

---

[8] The schedules were amended to include the cylinder and drawworks after Rollings retained a new attorney. An attorney's failure to list items on a schedule does not immunize the represented party from the effect of the schedules. *See Wolinsky v. Oak Tree Imaging, LP*, 362 B.R. 770, 780 (Bankr. S.D. Tex. 2007).

contemporaneous documents in evidence, such as invoices, against Rollings' testimony. Under Federal Rule of Civil Procedure 52(a) "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." "The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). When, as here, the trial court "is faced with testimony that may lead to more than one conclusion, its factual determinations will stand so long as they are plausible–even if we would have weighed the evidence otherwise." *Nielsen v. United States*, 976 F.2d 951, 956 (5th Cir. 1992). "Where the court's finding is based on its decision to credit the testimony of one witness over that of another, 'that finding, if not internally inconsistent, can virtually never be clear error.'" *Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993) (internal citation omitted). We find no reversible error in the bankruptcy court's fact determinations. The bankruptcy court made a credibility determination that Rollings' testimony was truthful. Moreover, the bankruptcy court was unconvinced by Rex-Tech's evidence that it had purchased the items. This determination was within the discretion of the factfinder. We briefly review the evidence and Rex-Tech's arguments regarding ownership of each item.

### a. The hydraulic cylinder

Rex-Tech argues that the bankruptcy court made the following clearly erroneous findings in concluding that Rollings owned the cylinder: Fessenden could not confirm whether he sold the cylinder to Rex-Tech; Fessenden testified that IRI sold more than one cylinder; nothing in Petersen's testimony

established Rex-Tech's ownership; and Rollings' testimony was more credible than the contemporaneous documents.

First, there was an evidentiary basis for the bankruptcy court to arrive at its conclusions regarding Fessenden's testimony.  While Fessenden testified that he was positive he had sold the disputed cylinder, his unequivocal testimony was undermined by the fact that he admitted that he did not personally receive the payment and did not know the purchase order number of the cylinder.  Because Fessenden admitted that he did not personally receive payment from Tex-Tech, it was permissible for the bankruptcy court to discount Fessenden's assertion that he had sold the disputed cylinder and conclude that Fessenden could not confirm that he had indeed sold the cylinder to Rex-Tech.  Fessenden testified that he only knew of one sale of a hydraulic cylinder to Rex-Tech, but that other employees sold hydraulic cylinders.  Because Fessenden admitted that, although he only knew of one sale of a hydraulic cylinder to Rex-Tech, other employees of IRI also sold hydraulic cylinders, it was permissible for the bankruptcy court to infer that IRI sold more than one cylinder to Rex-Tech.  *See Anderson*, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations, but are based instead on . . . inferences from other facts.") (internal citations omitted).

Next, the bankruptcy court's finding that nothing in Petersen's testimony establishes that Rex-Tech purchased any of the disputed pieces of equipment was within its discretion.  Petersen testified that one of his responsibilities at Rex-Tech was to sign checks, and at trial Petersen identified a check payable to IRI, dated March 7, 2000, and a related check stub and invoice, dated January 26, 2000, for a used hydraulic cylinder.  But, the bankruptcy court was free to find, as it did, that Petersen's credibility was impaired by his self interest and his personal dislike of Rollings.  *See Schlesinger*, 2 F.3d at 139.  Moreover,

No. 10-20253

Petersen could not confirm that the transaction was definitely affiliated with a specific piece of equipment.  His testimony regarding Rex-Tech's purchase of the cylinder was plausibly weakened by the fact that he testified that he was not involved in the day-to-day operations of Rex-Tech and that he had written checks for other cylinders, as it diminished the likelihood that he had familiarity with the disputed cylinder.

Finally, the bankruptcy court did not erroneously give Rollings' testimony greater evidentiary weight than it gave to the contemporaneous documents.  If oral "testimony is in conflict with contemporaneous documents we can give it little weight. . . ."  *United States v. United States Gypsum Co.*, 333 U.S. 364, 396 (1948).  But, here there was no conflict between Rollings' oral testimony and the contemporaneous documents.  The evidence showed that the invoice and check for the hydraulic cylinder could have been for a different cylinder.  Additionally, though Rollings' testimony and interrogatories did vary on some minor details,[9] these inconsistencies could be attributed to memory lapse.  Nor was it fatal to Rollings' case that he did not have any documentation of his purchase.  *See Schlesinger*, 2 F.3d at 139-40 ("This alleged link between the two transactions is not subject to any writing whatsoever. . . . Thus, the court's decision rested almost entirely on credibility determinations.").  We find no clear error in the bankruptcy court's determination that Rollings owned the hydraulic cylinder.

### b. The drawworks

Rex-Tech argues that the bankruptcy court clearly erred by crediting Rollings' testimony regarding his purchase of the drawworks over the

---

[9] For example, Rollings testified that he purchased the disputed cylinder in 2000 and in his interrogatory stated 2001 was the purchase year.  Additionally, Rollings' discovery response stated that the cylinder "was acquired from Mr. Fessenden," but his testimony at trial was that he "could not answer" whether Fessenden was present when Rollings picked up the cylinder. Rollings' seemingly contradictory statements regarding whether Fessenden was present at the facility could be justified by the fact that Rollings picked up equipment for Rex-Tech on other occasions, and that his memory was flawed due to the passage of time.

contemporaneous documents, and over the testimony of Hellinger, Shepperd, and Petersen.

Variations in Rollings' testimony as to how he paid for the drawworks did not necessarily undermine Rollings' testimony that he was absolutely certain that he purchased the drawworks from TI for $10,000 with check number 100, using money from his savings account, in early 2001.  His bank savings account record showed a withdrawal of $10,000 on February 21, 2001.  Rollings testified that he did not remember if he paid in cash, and later, while looking at a bank record, he testified that he used a $10,000 check to pay for the drawworks.  But, the inconsistency in these two statements can be explained by memory lapse.  Rollings testified that he recalled the event because his wife at the time was angry about this purchase.  His only documentary evidence of the purchase was a sales contract which he acknowledged was drafted by Betty Ochoa ("Ochoa"), his girlfriend at the time, not a TI employee.  But, the bankruptcy court was free to believe Rollings' testimony as it was not inconsistent or implausible.  This evidence provided a credible basis for the bankruptcy court to find that Rollings purchased the drawworks.

As with the testimony regarding the cylinder, it was permissible for the bankruptcy court to credit Rollings' testimony regarding the drawworks over Shepperd's and Hellinger's.  Shepperd's testimony unequivocally recounts that TI did not sell a drawworks to Rollings in the time that Rollings claimed he bought it.  Shepperd testified that "[a] complete 1320M never was sold to Mr. Rollings," and that he did not recall TI having a complete 1320M drawworks.  Hellinger testified that he never received a check from Rollings for a drawworks.  But, "a trial judge does not have to believe any witness . . . if there is reasonable cause not to believe him," such as conflicting testimony.  *Gee Chee On v. Brownell*, 253 F.2d 814, 817 (5th Cir. 1958).  The bankruptcy court did not specifically discuss Shepperd's and Hellinger's testimony.  Nonetheless, because

it made a global finding that Rollings' testimony was credible, it was permissible for the bankruptcy court to credit Rollings' testimony over that of Shepperd and Hellinger without further discussion. The bankruptcy court also acted within its discretion in crediting Rollings' testimony over Petersen's testimony that Rex-Tech purchased the drawworks from CV International. The bankruptcy court did not have to believe Petersen's testimony that Rex-Tech used the $125,000 check in evidence to purchase the drawworks. Thus, the bankruptcy court's finding that Rollings owned the drawworks was not clearly erroneous.

### c. The drum shaft

Finally, Rex-Tech contends that the bankruptcy court clearly erred in finding that Rollings purchased the drum shaft. The drum shaft was a part of the drawworks. Rex-Tech claims that because Rollings admitted that Rex-Tech acquired the drum shaft by providing Diamond Offshore with a trade-in credit on the purchase of another drum shaft, Rollings could not have been the owner of the drum shaft. But, Rex-Tech's argument ignores the explanation given by Rollings. According to Rollings, he permitted Rex-Tech to sell the drum shaft from his drawworks to Diamond Offshore with the understanding that the drum shaft traded in by Diamond Offshore would be repaired and replaced to him. Thus, he was to be restored a working, useable drum shaft in exchange for allowing Rex-Tech to provide Diamond Offshore with his drum shaft. The bankruptcy court was free to accept Rollings' explanation, and the trade-in credit to Diamond Offshore does not negate Rollings' ownership of the drum shaft.

### 5. Sufficiency of the findings for appellate review

Rex-Tech argues that the bankruptcy court failed to sufficiently describe its reasoning regarding the following issues: conflicting contemporaneous documents; the credibility of Rollings; the testimony of TI's principals; the alleged forgery of the sales contract; and Rollings' testimony pertaining to the drum shaft. "Rule 52(a) exacts neither punctilious detail nor slavish tracing of

the claims issue by issue and witness by witness." *Collins v. Baptist Memorial Geriatric Cent.*, 937 F.2d 190, 194 (5th Cir. 1991) (internal quotation marks and citations omitted). It only "require[s] findings that are explicit and detailed enough to enable us to review them under the applicable standard." *Id.* (internal quotation marks and citations omitted). "If a trial judge fails to make a specific finding on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with its general holding so long as the implied finding is supported by the evidence." *Century Marine v. United States*, 153 F.3d 225, 231 (5th Cir. 1998). Overall, the bankruptcy court's eight-page findings of fact and conclusions of law are sufficiently detailed to adequately state the factual and legal bases for the bankruptcy court's denial of Rex-Tech's ownership claim. They provide a sufficiently definite predicate for appellate review.

Each of the court's evidentiary choices that Rex-Tech challenges are supported by the evidence. We can assume that the bankruptcy court impliedly made a finding consistent with its general holding on these issues. First, there was evidence that the alleged contemporaneous documents were not necessarily associated with the equipment at issue because Rex-Tech's witnesses could not definitively associate the documents with the disputed equipment. Nor did the bankruptcy court err by failing to issue any findings concerning the testimony of TI's principals, Hellinger and Shepperd. "A court may not arbitrarily reject the testimony of a witness whose testimony appears credible," *Gee Chee On*, 253 F.2d at 817, but it has no obligation to describe the weight of the testimony of every witness. The bankruptcy court's global finding that Rollings' testimony is credible is a sufficient basis from which to conclude that the bankruptcy court made the determination that it was picking Rollings' testimony over Shepperd's and Hellinger's. Despite Rex-Tech's argument to the contrary, the bankruptcy court described that it found Rollings' testimony at trial credible. Nor was the

bankruptcy court required to make any findings concerning whether or not the sales contract was forged. That was not a material issue because to the extent that Rex-Tech argues that the bill of sale is not an original, Rollings' testimony itself acknowledges that. Finally, as stated above, we find Rollings' admission that "Rex-Tech provided its customer with a trade-in credit in exchange for the Drum Shaft," to be consistent with the other evidence. In sum, the bankruptcy court's findings meet the requirements of Rule 52(a).

We do not review the sufficiency of the evidence de novo and we cannot substitute our judgment for that of the factfinder. The evidence supports the bankruptcy court's findings. Because there is evidentiary support, there is sufficient support for the findings of the bankruptcy court and we find no clear error in its conclusions.

## CONCLUSION

For the aforementioned reasons, the judgment of the district court is AFFIRMED.